CAZARES (UNITED STATES v.). See Case No. 14,761.

CAZE (LAMALERE v.). See Cases Nos. 8,002 and 8,003.

———

## Case No. 2,538.

### CAZE et al. v. REILLY.

[3 Wash. C. C. 298.][1]

Circuit Court, D. Pennsylvania. April Term, 1814.

GENERAL AVERAGE—CONTRIBUTION—LOSS OF VESSEL.

1. The schooner Julia, on her voyage from France to Philadelphia, being chased by a British frigate, and her capture being deemed inevitable by the captain, he, with the advice of the officers and crew, ran her on shore at Long Branch, in New-Jersey; and before the enemy could board her, a large part of the cargo was saved; after which she was burnt. The master claimed to retain the goods saved, as subject to freight, general average, and expenses.

[Cited in Barnard v. Adams, 10 How. (51 U. S.) 302; The Congress, Case No. 3,099; Shoe v. Low Moore Iron Co., 46 Fed. 128.]

2. The Rhodian law de jactu, is the parent of the law of maritime contribution. The principle to be deduced from the Rhodian law, and from the general maritime law of nations, is, that if the cargo or ship, or any part of either, be voluntarily sacrificed, or exposed to danger, for the common safety, the part saved shall contribute to repair the loss sustained, provided the object for which the sacrifice was made be attained.

[Cited in Mutual Safety Ins. Co. v. The George, Cases Nos. 9,981, 9,982; Patten v. Darling, Case No. 10,812; The Star of Hope v. Annan, 9 Wall. (76 U. S.) 232; Sonsmith v. The J. P. Donaldson, 21 Fed. 674.]

3. An intention to consign to inevitable loss goods thrown overboard, forms no part of the reason assigned by the Rhodian law for contribution; and is not necessary to authorize the claim.

[Cited in Barnard v. Adams, 10 How. (51 U. S.) 304.]

4. The object always is, to incur a partial loss, and to risk a minor or contingent danger, to avoid the more probable or certain loss of the whole.

5. It is sufficient to justify a claim to contribution, if the danger sought to be avoided be so imminent, that the measure adopted may be beneficial to all.

6. If the exposure of the vessel be made for the common safety, and be successful in relation to a part of the cargo, it is immaterial whether her total loss was produced immediately by the stranding, or consequentially, by placing her in a situation which effected her destruction.

[Cited in Columbian Ins. Co. v. Ashby, 13 Pet. (38 U. S.) 343.]

7. If the ship be lost, there can be no contribution, because the object for which the jettison was made was not attained. In case of a general shipwreck, there can be no contribution, because it was not voluntary.

At law. This was a replevin, to recover a quantity of goods saved from the wreck

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

of the Julia. The following case was agreed to stand for a special verdict. The schooner Julia, owned by the defendant, and laden with a cargo of merchandise, departed from Bordeaux on the 23d of February, 1813, bound for Philadelphia. On the 8th of April in the same year, while proceeding up Delaware bay, she was chased by a frigate of the enemy, then forming the blockade of that bay and river, and was compelled to bear away for New-York. The chase continued in the direction of New-York until the 9th of April, when a seventy-four of the enemy endeavored to cut the schooner from off the land, and not succeeding, joined the chase; but having gone so far on her course as Long Branch, in New-Jersey, the schooner was headed by another frigate of the enemy. The master then deliberated, and consulted with his officers and crew, and by their advice, for the purpose of avoiding capture, and for the common benefit of all concerned, voluntarily ran the schooner on shore at Long Branch aforesaid. After saving sundry cases and packages of merchandise, and part of the furniture and rigging of the vessel, the enemy compelled the master, officers and crew, of the schooner, to leave her; and then boarded, set fire to her, and left her. On the 10th of April, the schooner having burned to the water's edge, the master and officers, with the assistance of sundry fishermen, succeeded in saving other parts of the cargo, together with several spars, anchors, and other parts of the vessel's furniture and rigging; but so much of the hulk as was not burned, was washed upon the shore and lost. The merchandise saved, consisted of such dry goods as lay near at hand, and could be gotten out before the enemy boarded; and such wines, brandies, and other articles not liable to injury, as were in the bottom of the schooner. The gross value of the schooner at the time of said stranding, was 10,000 dollars. The gross value of her entire cargo, at the same time, including duties and freight, amounted to 101,193 dollars. The duties would have been 19,950 dollars. The gross freight of the whole cargo was 12,745 dollars. The value of the tackle and furniture of the vessel saved, amounted in gross, to 752 dollars. Expenses of saving, 262 dollars. The value of goods saved, gross, was 51,468 dollars, including duties, 8,622 dollars. Other expenses 1,504 dollars, and freight. Value of freight saved, 4,736 dollars. The plaintiffs' goods saved, amounted, gross, to 10,727 dollars, on which the duties were 1,531 dollars; freight, 367 dollars; and expenses of saving, 187 dollars. The defendant, as owner of the vessel, detained the plaintiffs' goods for freight, general average, and expenses, after the plaintiffs had tendered a sufficient sum to cover freight and expenses, but not general average. He afterwards, at the request of the plaintiffs. sold them at public auction; and delivered over the proceeds, after re-

taining 4,300 dollars, a sum deemed sufficient to cover the general average.

The questions submitted to the court are —1. Whether the goods of the plaintiffs, which were saved, as above, are bound to contribute to the loss of the schooner by way of general average? 2. Whether they are bound to contribute to the goods and freight lost, or either of them, by way of general average? If the court shall be of opinion, upon either of these points, in the affirmative, judgment be entered for the defendant; and the parties to abide by an adjustment of the general average, made by such person, and on such principles, as the court shall direct. If the opinion should be in the negative on both points, judgment to be entered for the plaintiffs; and the amount due by the defendant to the plaintiffs, if any thing, to be settled by referees to be appointed by the court.

The first question only was argued.

Duponceau, for plaintiffs, cited the following cases, to prove that where the ship is lost, it is not a case of general average: Park. 170, 171; 1 East, 120; Weynsteen, 218; Rhod. Law; 3 Law J. 14–19; Bynk. 424; 1 Magen, Ins. 52, 53, 64; Sea Laws, 326; 2 Vatt. Law Nat. 173, 204, 209, 205, 165, 168; Spanish Ord. 179, 180; Vinn. 262; Marquard, § 36; Locc. 1006; Kurick, 781, 788; Am. Lex. Mercat. 286; 4 Prussian Code, pp. 218, 226, §§ 1820, 1821; 2 Magen, Ins. 97, 332; 1 Emerig. Ins. 614, 616, 408; 9 Johns. 9; Poth. Average, § 113, p. 106. To prove that the Sea Laws contain a spurious statement of the Rhodian law, de jactu, and that the only true statement of it is in the digest, as set forth in 3 Am. Law J. 14 et seq., he cited 2 Bynk. 89, c. 8; 1 Azuni, Mar. Law, 282.

Binney and Chauncey, for defendant, cited the following cases: Abb. Adm. 331, 333, 335 [The Indiana, Case No. 7,020]; Sea Laws, 93, 104, 107, 110, 135; 2 Magen, Ins. 15, 200; Voetius, 690; 2 Brown, Civ. Law, 199; 1 Emerig. Ins. 602, 612, 408; Roc. N. 60, 99; 2 Marsh. Ins. 537; Gurdon, c. 5; 1 Emerig. Ins. 615.

The second question was not argued, and of course no opinion was given on it.

Mr. Duponceau, for plaintiffs.
Mr. Rawle, for defendant.

Before WASHINGTON, Circuit Justice, and PETERS, District Judge.

WASHINGTON, Circuit Justice, delivered the opinion of the court.

It seems to be universally admitted, that the Rhodian law, de jactu, was the parent of maritime contribution. That law, however, provides only for certain cases, in which contribution is to be allowed, and does not lay down any general rule. But it recognizes, in relation to maritime contribution, a great and striking principle, within the equity of which, every possible case of contribution may by fair deduction be brought. This law declares, "that if goods be thrown overboard, for the sake of lightening the vessel, as it is done for the good of all, all must come into contribution for the same." The principle of this rule is, that where a common benefit is received, by the voluntary sacrifice of a part, the loss sustained should be borne by the property saved. And although no other case is provided for, but the jettison of goods, and partial injuries to the vessel, yet the principle being a voluntary sacrifice for the common safety, contribution to repair the loss sustained, is equally within the equity of the law. The ordinances of other countries, having the Rhodian law for their basis, and the construction given to that law, by learned jurists, have extended the principle of it to so many cases of contribution, that it could scarcely have been supposed that one could arise, which had not been provided for. Thus, if the ship and cargo be ransomed from pirates, by a sacrifice of part of the cargo, or by a ransom bond—if, in the act of making a jettison, the ship, or other parts of the cargo receive injury—if the goods are not consigned to apparent destruction, but are put into lighters, for the relief of the ship, and the lighters perish—if the ship be damaged, by cutting the cable and masts, whereby she incurs a loss for the common good—or, if the deck or sides be cut, in order to facilitate a necessary jettison—these, and many other cases, which might be enumerated, are considered as cases of contribution, by all the maritime countries of the world. But to constitute a claim to contribution, the jettison must be designedly made, with a view to the common safety, and must be successful, at least in part; for if the ship be lost, by the peril which the sacrifice was intended to avert, there is no contribution due. The principle fairly to be extracted from the general maritime law of nations, upon the subject of contribution, is, that if the cargo or ship, or any part of either, be voluntarily sacrificed, or exposed to danger, for the common safety, the part saved shall contribute to repair the loss sustained, provided the object for which the sacrifice was made was obtained. This principle is not inconsistent with the rule contended for, by the plaintiffs' counsel, that if a jettison be made, and the ship saved, there shall be contribution; but if the ship be lost, there shall be none. That rule is correct in all its parts, when applied to a mere case of jettison. But the principle of it is equally applicable to a loss voluntarily incurred by the ship, for the common safety, if safety be thereby attained.

Let us now examine the correctness of the principle—1st, by the reason of it; and 2d, by authorities:

1st. The reason assigned in the Rhodian law, why contribution should be made, in case of a jettison of goods, is so entirely applicable to that of loss, or injury incurred by the vessel, under the same circumstances, that it becomes those who would distinguish them, to point out the difference. That reason is, that all should contribute to a loss, occasioned by the jettison, for the sake of lightening the vessel, because it was done for the benefit of all. If so, and the ship expose herself to loss, for the sake of obtaining safety for all, and in consequence of such voluntary exposure, she is lost, why should not all contribute to repair the loss?

The reasons assigned by the plaintiffs' counsel, are, that the loss of the vessel was not contemplated, as the consequence of the stranding; that the act of stranding, exposes the common interest equally to destruction; that it cannot be certainly ascertained, that the loss of the ship resulted from the stranding; and, lastly, that the principle of contribution, the safety and prosecution of the voyage, cannot be effected, if the vessel be totally lost. Let these reasons be examined in detail: The loss of the vessel was not intended. An intention to consign the goods thrown overboard, to inevitable destruction, forms no part of the reason assigned by the Rhodian law for contribution; and was not considered to be deducible from it, by those jurists who undertook to apply that law to other cases of contribution; otherwise, goods put into lighters, could never be entitled to contribution. As to these, the probability is, that they will be saved. The plaintiffs' counsel contends, that this is an excepted case; but he has not shown it to be so, and it is clearly within the reason of the general principle. So, injury sustained by the fall of a mast, is contingent, and not foreseen or intended. Even goods thrown overboard may be saved—and if saved, they belong to the owner at the time of the jettison—if not saved, the loss is to be repaired by contribution. The truth is, that it is the motive for the act, in relation to the rest of the property, and not the intention of the jettison in relation to the fate of the thing sacrificed or exposed to danger, which gives rise to the law of contribution.

2d. The stranding exposes the cargo, as well as the vessel, to the risk of loss. If this reason were sound, then, a vessel stranded with a view to the common safety, would not be entitled to contribution, even for the purpose of repairing and floating her, if her situation admitted it; and yet it is clear, that by the universal maritime law, the expenses incurred for these purposes, are a subject of general average. But if this reason were admitted, it might produce very unsatisfactory results; for, it cannot be said, with any degree of confidence, that the loss of the anchor by the cutting of the cable, or the loss of the masts, may not expose the whole to danger. But the object is to incur a partial loss, and to risk a minor or contingent danger, to avoid the more certain loss of all. And this applies strictly to the voluntary stranding of the ship. Injury to her is certain—a total loss probable. The escape of the persons on board from the dangers of the storm or of an enemy, and the safety of the cargo, if not certain, are considered to be more so than by continuing at sea; and with this calculation the measure is adopted. A certain injury, therefore, with a probable total loss, is voluntarily incurred by the ship for the common safety; and consequently, she is entitled to contribution.

3d. It cannot be certainly ascertained, whether the loss of the ship resulted from the stranding, or from some other cause. Neither can it be certainly ascertained, that the loss resulted from that cause, in case the damage sustained should be short of a total loss; in which case it is throughout admitted, that such damage must be repaired by a general average. It is sufficient, if the danger sought to be avoided, be so imminent that the measure adopted may be beneficial to all. Besides, the difficulty of proving that the immediate loss resulted from the stranding, would afford an insurmountable objection to the reason here assigned. For, although she may be burned, as she was in this case by the enemy, or may lie on the strand exposed to subsequent tempests, still, it would be impossible to say, whether her loss was not irremediable independent of these new causes. If the exposure of the vessel be made for the common safety, and be successful in relation to a part of the cargo, it is of no consequence whether her total loss was produced, immediately, by the stranding; or consequentially, by placing her in a situation by which her destruction was effected.

4th. It is contended, in the last place, that the principle upon which contribution is allowed, is the safety and prosecution of the voyage; which cannot be effected if the vessel be totally lost. This reason appears to be entirely fanciful; it has no authority of any kind to rest upon, and is inconsistent with other cases where the vessel is lost, and yet contribution is allowed. It can scarcely be denied, that in cases of such imminent danger as to justify the desperate remedy of stranding the vessel, the great object of all the parties who advise the measure, must be, first, the preservation of the lives or the liberty of those on board; and in the next place, the safety of the cargo, and possibly of the vessel. All hope of the further prosecution of the voyage, must in general be abandoned; although there is a possibility that it may be resumed. But, if this reason be a sound one, what will be said in a case where a jettison is made of the whole of the cargo, or so great

a part of it as to render the further prosecution of the voyage not worth pursuing? The voyage would be lost to all the parties concerned; and nothing would remain for any of them, but a compensation by way of general average, which might as well be adjusted at the nearest port, without the formality of proceeding unnecessarily to the original port of destination. And what seems to be conclusive is, that if the ship survive the danger which the jettison was made to avert, and is totally lost even the next day, the goods saved shall contribute to the loss of the part thrown overboard, notwithstanding the entire destruction of the voyage. The owner of the goods saved, might, with equal propriety, in that case, as in this, complain that he should be called to contribution, when, by the loss of the vessel, the voyage is terminated, and the object for which the sacrifice was made eventually defeated.

Second. We now proceed to examine the authorities, premising that they ought to be strong and uniform, to bear down the reasons upon which the equity of contribution is founded, in a case like the present. The ordinance of Louis XIV. (2 Valin, Comm. 168, 205, 207, 209) enumerates, in the 6th article, five distinct cases of contribution; amongst which, is the expense of lightening and getting the ship afloat; and the 18th article declares, that if the ship be opened in order to draw out the goods, those goods shall contribute to the repairs of the damage thus occasioned to the ship. It is to be remarked, that this ordinance does not, in any part of it, notice the case of a voluntary stranding of the ship. But Valin, in his commentary, states, that if to avoid a total loss by shipwreck or capture, the master runs his vessel ashore, the damage which he shall suffer, on that occasion, and the charge of putting her afloat again, are general average; all having been done for the common safety. The argument founded upon this ordinance, and upon the comments of Valin, is, that as the expenses incurred for repairing the vessel and putting her afloat, are alone provided for; and since all the foreign ordinances agree in this, that unless the ship be saved, there shall be no contribution; it follows, that if the vessel, in consequence of a voluntary stranding, be totally lost, the law of contribution ceases; the rule "save who save can," or in other words, "every man for himself," applies. Now, this conclusion is altogether inadmissible. The enumeration of certain cases, to which a general principle is applied, can never exclude any other case which may fairly be brought within the same principle. On the contrary, the rule is, that where there is the same reason, there is the same law. If the damage which a vessel sustains by a voluntary stranding for the common advantage, although that damage should be nearly equal to the value of the vessel, is declared to be a case of contribution; the reason which dictates such a law,

will command the extension of it to the case of a total loss of the vessel. As to the rule contended for, that there can be no contribution where the vessel is lost, it is totally misapplied in this argument. It relates altogether to an ineffectual jettison, and to a general or involuntary shipwreck. In the first case, if the ship and the remainder of the cargo, for the preservation of which the jettison was made, be lost, and the goods thrown overboard, or put into lighters, be saved, there can be no ground for contribution; because the jettison was made, not for the sake of those goods, but for the safety of the ship and the rest of the cargo. But, if the object of the jettison be attained by the safety of a ship, at the expense of the goods thrown overboard; then, the law of contribution applies to repair the loss sustained by the owner of the goods thus sacrificed for the common good. Neither is it a case of contribution, if the ship being lost in the same storm in which the jettison was made, a part of the cargo is saved; because the purpose for which the sacrifice of the goods thrown overboard was made, has not been attained. See 2 Valin, Comm. 205; Weytzen, p. 237; Guidon, 133. In the case of a general shipwreck, the essential principle of contribution is wanting, there being no act voluntarily done for the common safety of the whole. Consequently, every man must take care of what belongs to him, and must depend upon his own exertions to save it. Ord. Louis XIV. art. 17; Valin, Comm. 209, 237. It is unnecessary to notice particularly, those parts of the marine ordinances of Bilboa, Wisbuy, Rotterdam, Copenhagen, the Code Napoleon, and the modern Prussian Code, promulgated in 1791 and 1794; which were quoted and relied on by the plaintiffs' counsel, because they apply either to an involuntary shipwreck, or to a jettison, or to damages sustained by a voluntary stranding, and not to a total loss of the ship; and are all susceptible of the same explanations which we have just given, of the ordinance of Louis XIV., which they resemble. It is admitted, that neither the Rhodian law, nor any of these ordinances, have noticed the case of a voluntary stranding, for the common safety, followed by the total loss of the ship.

We meet with but two decisions, which have ever been given upon the very point presented to the consideration of this court. The first was made by the maritime judges of Amsterdam, in the year 1661, and is reported by Bynkershoek (2 Bynk. 1, 4, c. 24, p. 424). They decided, "that if a cable is cut in a storm in order to save the ship, whereby the anchor is lost, the cargo is not bound to contribute, because there was no voluntary jettison." These judges then add, "for the same reason, if a vessel be voluntarily run ashore, the goods unladen from her while she is lying aground, are not to contribute any thing; also, because no contribution is due, unless the ship

is saved;" and the Rhodian law, 4, is cited. Now, if this case be truly reported, which may well be doubted, it is, upon the face of it, too absurd to merit the least respect. The reason assigned. why, if the cable be cut in a storm in order to save the ship, contribution shall not be made to repair the loss of the anchor, is, that the jettison was not voluntary; and yet the case supposes, that the anchor was voluntarily sacrificed to save the ship. Neither can there be any doubt, but that the law is different from what this case states it to be, in relation to the loss of the anchor. Abb. Adm. 219 [The Joshua Barker, Case No. 7,547]. In like manner, one of the reasons assigned by the judges in this case, why, if the vessel be stranded and lost, there shall be no contribution, is, that the stranding was not voluntary; and yet the case states, that the vessel is voluntarily run ashore. The other reason assigned is, that there is no contribution, unless the vessel be saved; and this reason is founded on the Rhodian law, 4, which relates to goods put into a lighter to save the ship, but without effect; in which case it is truly said, that there can be no contribution. except where the vessel is saved by the jettison. In the one case, the goods are ineffectually lost or exposed, in order to save the ship; and therefore, the object not being attained. there is no contribution. In the other, the ship is effectually exposed and sacrificed to save the cargo. The converse, therefore, of the rule, applies. With these observations, we shall leave this case to the merited censures of Bynkershoek, who condemns and exposes it throughout. We approach, with infinitely more respect, the case decided in the supreme court of New York, cited from 9 Johns. 9. It is that case alone, which has produced any hesitation in our mind. The great law learning of that court, is respected by none more highly than ourselves; and we should upon all occasions see the propriety of examining very thoroughly, any opinion which we might form, differing from a decision of that court, before we should feel ourselves safe in entertaining or expressing it. This we have faithfully done in the present instance; and we can only add, that the course of reasoning which our mind has suggested, forcing us to a different conclusion, we must follow where it leads.

We come now to the consideration of the opinions of foreign jurists, relied upon by the plaintiffs' counsel, to show that this is not a case of general average. Vinnius, 262, commenting on the Rhodian law, 5, says, that in case of shipwreck, (alluding obviously to an involuntary shipwreck, as do the Basilicks to which he refers,) there shall be no contribution; but he adds, that the damage suffered by a sacrifice made for the good of all, to avoid a common danger. is to be made good by the contribution of all. Now,

this is the precise doctrine which we adopt, and is the basis on which our opinion is formed. The whole of the quotation from this author proves, that he considered the question of contribution, as turning upon the fact of voluntary shipwreck for the good of all concerned, or involuntary, and not upon that of the partial or total loss of the ship. The damage for which contribution is to be made, is stated by this author without limitation; and whether it be to the whole amount of the vessel, or to a half, or a greater or smaller proportion of her value, forms no part of the principle upon which his opinion is formed. Weytzen, 237; Locc. De Jure Mar. 1006; Kuricke, 781; Marquardus, 393; and Pothier, 106,—all speak upon this subject in reference to an ineffectual jettison, or of an involuntary shipwreck, and lay down the same doctrine as Vinnius.

Emerig. (Ins. 408, 614, 616) is the only writer upon the subject of average, who intimates an opinion, that in the case of a voluntary stranding, followed by the total loss of the vessel, there shall be no contribution. "If," says he, "the stranding was done voluntarily for the common safety, it would be general average, provided always that the ship be again set afloat; for, if the stranding be followed by shipwreck, then it is, save who can." There is no writer upon maritime law, whose opinions are more to be respected, in general, than those of Emerigon. But, after all, it is only an opinion in this case; in support of which, he quotes no law, ordinance, or decision, and does not even condescend to assign a single reason. Immediately after the opinion just cited, he refers to what he afterwards says, in respect to a jettison which does not save the ship; as if he intended to illustrate, by this latter case, the opinion he had given in the case of a voluntary stranding and loss of the ship. Now, it is most obvious, that no two cases can be more unlike in principle. In the one, an ineffectual sacrifice of goods is made to save the ship. And in the other, an effectual sacrifice of the ship is made to save the cargo. In the former, the property demanding contribution, has no merit, and is therefore entitled to no compensation. In the latter, the converse holds good throughout. Nevertheless, we should be greatly embarrassed by this naked opinion of Emerigon, if it stood uncontradicted by other writers, equally respectable. The opinions of these jurists, we shall now proceed to state.

Voet. B. 14, tit. 2, § 5, in his Commentary on the Digest, says, "if the ship lies aground without the fault of the master, and he, having made jettison in order to save the ship, has thought it most prudent to save the goods by means of lighters, and if the greatest part of the goods being saved, a storm shall arise and the ship be broken, this damage being incurred for the sake

of averting the common danger, shall be suffered in common; for, the goods do not appear to have been put into the lighters, for the sake of lightening the ship in order to save her and the goods remaining on board; but rather the ship itself has been exposed to accident, that the goods should be saved by means of the lighters;—analogous to this, is the following case—If, by the common advice of the best informed men on board, the ship has been wilfully run ashore, and thus has perished, the goods being saved." Here the writer assigns the reason of his opinion, and founds it upon the distinction between an ineffectual jettison where there is no merit, and an effectual sacrifice of the ship where there is; and denies contribution in the former, and allows it in the latter, upon the reason of that distinction. 2 Bynk. p. 424, in his criticism upon the decision of the Dutch judges, before alluded to, condemns that opinion throughout; and assigns unanswerable reasons, in our opinion, for his censure. "It is one thing," he says, "if the tempest alone drives the ship ashore, and there breaking the armament of the ship, the masts, &c., in which case the ship owner is like the smith, who, while he is performing his duty, breaks his anvil or hammer. It is another thing, if by the advice of a majority of the crew, that the lives and the goods may be saved, the vessel is run ashore; or by their advice, the mast is cut away, or the cables and anchors are cut. Therefore, theirs is the best opinion, who answer, that if the masts or cables are cut, that the vessel and goods may be saved from the storm, there shall be contribution; and surely the same, of a vessel voluntarily run ashore, as of any of her instruments cast overboard on account of danger, is clearly ordained." Here it is obvious, that Bynkershoek is speaking of a vessel run ashore and totally lost; because he is commenting upon the opinion of the Dutch judges, which is given upon that case; and because he resembles the case of the mast or cable cut and lost, to that of the stranded vessel. His opinion, therefore, is given upon the very question now under consideration.

To these authorities, we add, with great confidence, the opinion of a distinguished judge of the supreme court of the United States, intimated in one of his notes upon Abbott, a work in itself of great merit, and which is rendered still more valuable by the labours of the learned editor.

We shall conclude this opinion, by stating, that the ordinance of Koenigsberg, the only one which provides, in express terms, for the case of a loss by the stranding of the ship for common safety; declares, that in such a case, the goods saved shall contribute. 2 Magens, Ins. 200. Upon the whole, therefore, we are of opinion, that the law is in favour of the defendant.