JEREMIAH MERITHEW & others *vs.* GEORGE R. SAMPSON & others.

The owners of a vessel may maintain a bill in equity to recover contribution from the owners of the cargo, if the master, in order to avoid the danger of being driven, broad-side on, upon a reef, sacrifices the chance of saving her from this peril, and runs her over the reef and upon the beach, and thus saves a portion of the cargo which would have been lost, if she had gone to pieces upon the reef.

A *claim* for contribution may be maintained against. the owners of a cargo, although the vessel is totally lost.

BILL IN EQUITY by the owners of the brig Mercy L. Cousins to recover contribution from the owners of her cargo, alleging that on the 16th of February 1859 she sailed from Havana for Boston, laden with a cargo consigned to the several defendants; " that on the 8th of March 1859 said brig, having arrived in Boston Bay, met a violent gale of wind from the north, accompanied by a thick snow storm, and thereupon stood to the eastward, under close reefed sails, the master of said brig believing her far enough off the land to clear Cape Cod and get into the south channel by running that course; that at one o'clock on the morning of the 9th of March, the snow storm and gale still continuing, they discovered breakers under their lee, and so near that there was not room to wear or stay; and the said brig was then and there in imminent peril of being driven, broadside on, upon a reef, which, at that place, makes out some distance from land, and thereby, with all her cargo totally lost; and the master of said brig deemed it advisable, in order to save said vessel and cargo, and the lives of the persons on board, to run her, head first, over the reef and upon the beach; and he

accordingly ordered the main halyards to be cut, so that the mainsail might run down, the helm to be put up, and the vessel to be got before the wind and sea; and the helm was put up, and said halyards cut accordingly, and said mainsail run down; and said brig, falling off before the wind, headed toward the breakers, passed over the reef, striking slightly on it, and, continuing her course before the wind and sea, struck the beach, head on; that soon afterwards the sea drove her round, side on, where she thumped heavily; the deck load broke away; her houses, cabin, bulwarks, stanchions and rails on her larboard side were carried away by the sea; her decks sprung up, her water-ways opened, and before the tide left her she became a total wreck; that the master of said brig caused her to be got before the wind, and to head toward the breakers and the shore, with the intention of running her over the reef and head on to the beach, for the purpose of saving all that could be saved of the ship, cargo and freight, and the lives of the persons on board, all of which were in imminent danger of being totally lost if she had not been run on the shore voluntarily, in manner aforesaid; and by such voluntary stranding a large part of said cargo, [the particulars of which are omitted] was saved and delivered to the respective owners thereof; but said brig became a total loss, with the exception of some wrecked materials, of the value of nine hundred sixty-one 5-100 dollars; and the owners of said vessel are entitled to receive from the owners of the cargo saved their respective proportions of the damage and loss occasioned by said voluntary stranding, the same being a sacrifice made and incurred by the owners of said vessel for the common benefit of · vessel, cargo and freight, and all interested therein."

The bill further alleged that the plaintiffs' had caused a general average adjustment to be prepared, showing the just amount due from the several defendants, and payment thereof had been demanded and refused.

The defendants filed a general demurrer.

*F. C. Loring,* for the defendants.

*J. C. Dodge,* for the plaintiffs.

Bigelow, C. J.    The principles on which a claim to a general

average contribution depends are well settled and familiar. The difficulty usually lies in applying them to the facts in proof. In the present case, however, we are of opinion that the allegations in the bill are sufficient to sustain the claim.

1. In the first place, it is alleged that there was a common peril — the danger that the vessel would be driven, broadside on, upon a reef, which made out some distance from the land, and thereby, with all her cargo, be totally lost.

2. In the second place, it is alleged that the master, to avoid this peril, and for the purpose of saving vessel and cargo, as well as the lives of persons on board, deemed it advisable to run the vessel over the reef and upon the beach; that accordingly he took such measures as to cause the vessel to fall off before the wind, to head toward the breakers, to pass over the reef, striking lightly on it, and to continue her course before the wind and sea, until she struck the beach, head on, where, before the tide left her, she became a total wreck. There was, therefore, a voluntary sacrifice of the vessel for the benefit of all concerned. The master gave up the chances of escaping the peril which was imminent, of going to pieces on the reef with an entire destruction of vessel and cargo, and elected another peril, by running the vessel on to the beach, which was certain to be attended with great injury to the vessel, if it did not cause her total destruction.

3. Thirdly, it is alleged that by this act of stranding the vessel on the beach, instead of allowing her to go to pieces on the reef, a large part of the cargo, which, if the vessel had struck on the reef, would have been totally lost, was saved. There was, therefore, present safety from a peril, which threatened entire destruction, attained by the voluntary sacrifice of the vessel.

It is impossible now to say on what precise ground the case of *Cutler* v. *Rae*, 1 Parsons Mar. Law, 292, n., referred to by the defendants, was decided. From the fact that it was not reported, the inference is that it turned on a question of fact, and did not involve any new principle of law. It differs, however, from the present case in the leading fact, that here it appears that an entirely new and different peril from that which threatened the

total destruction of both vessel and cargo was elected by the master, when he determined to run the vessel ashore. In the case of *Cutler* v. *Rae*, there was certainly room for the inference that the actual stranding of the vessel was the impending peril, and was the result of the action of the elements only, slightly and inconsiderably modified by voluntary agency.

The position that no claim for contribution can be sustained by the owner of the vessel where she is totally lost is not supported by the more recent authorities, and is not reconcilable with sound principles. *Columbian Ins. Co.* v. *Ashby*, 13 Pet. 331. *Gray* v. *Waln*, 2 S. & R. 229. *Caze* v. *Reilly*, 3 Wash. C. C. 298. 3 Kent Com. (6th ed.) 239, *note.* *The Nathaniel Hooper*, 3 Sumner, 542. *Demurrer overruled.*