THE COLUMBIAN INSURANCE COMPANY OF ALEXANDRIA, PLAIN-
TIFFS IN ERROR, *vs.* ASHBY AND STRIBLING AND OTHERS, DEFEND-
ANTS IN ERROR.

The brig Hope, with a cargo, bound from Alexandria, in the District of Columbia, for
Barbadoes, insured in Alexandria, was assailed, while standing down the Chesapeake
bay, by a storm which soon after blew to almost a hurricane. The vessel was steered
towards a point in the shore for safety, and was anchored in three fathoms water; the
sails were furled, and all efforts were made by using the cables and anchors to prevent her
going on shore. The gale increased, the brig struck adrift, and dragged three miles; the
windlass was ripped up, the chain cable parted, and the vessel commenced drifting again,
the whole scope of both cables being paid out. The brig then brought up below Cra-
ney Island, in two and a half fathoms water; where she thumped or struck on the shoals
on a bank, and her head swinging round brought her broad side to the sea. The cap-
tain finding no possible means of saving the vessel and cargo, and preserving the lives
of the crew, slipped her cables, and ran her on shore for the safety of the crew and
preservation of the vessel and cargo. The vessel was run far up on a bank, where after
the storm she was left high and dry, and it was found impossible to get her off. The
lives of all the persons were saved; the whole cargo of the value of $5335, insured for
$4920, was taken out safely, and the vessel, her tackle, &c., were sold for $256. Held:
that the insurers of the cargo were liable for a general average.

The question of contribution cannot depend upon the amount of the damage sustained by
the sacrifice of the property, for that would be to say, that if a man lost all his property,
for the common benefit, he should receive nothing; but if he lost a part only, he should
receive full compensation. No such principle is applied to the case of good sacrificed
for the common safety; why then, should it be applied to the total loss of the ship for
the like purpose? It is the deliverance from an immediate impending peril, by a common
sacrifice, which constitutes the essence of the claim. It is the safety of the property,
and not the voyage which constitutes the foundation of general average.

A consultation by the captain with the officers of the vessel, before running her on shore,
with a view to her preservation, and that of the passengers and cargo, may be highly
proper, in cases which admit of delay and deliberation, to prevent the imputation of
rashness and unnecessary stranding by the master. But if the propriety and necessity
of the act, are otherwise sufficiently made out, no objection can be made to it.

The freight of a vessel totally lost by being run on shore for her preservation and that of
the crew and cargo, ought to be allowed to the owner of the vessel as the subject of
general average, the cargo of the vessel having been saved by the stranding.

IN error to the Circuit Court of the United States, for the county
of Alexandria, in the District of Columbia.

This was an action instituted in the Circuit Court of the United
States, against the Columbian Insurance Company, for the purpose
of ascertaining whether the plaintiffs, Ashby and Stribling, and
Peter Hewit, were entitled to recover against the cargo of the brig
Hope, for a contribution for an average loss. The Columbian In-
surance Company were the underwriters on the cargo; and an
agreement was made between the parties to the cause, before the
trial, that "without regard to form, the real question between them
should be contested." Under this agreement the cause was tried,
and the jury found the following special verdict.

"We, of the jury find, that on the 27th day of May, 1825, the
brig Hope sailed from Alexandria on a voyage to Barbadoes, that

on the said vessel standing down the Chesapeake bay, the weather became thick and foggy, and that it appearing in the then state of the weather imprudent to proceed to sea, the captain kept away for Sewall's Point, for the purpose of making a harbour, where he anchored, with the best bower anchor in three fathoms water; that all sails were furled, and a good scope of cable paid out, the wind then blowing very fresh from the north-east; that at ten o'clock, P. M., on the 3d day of June, he let the small bower anchor under foot, and payed out the best bower anchor until both cables bore a strain; that the gale still increasing, the kedge anchor was let go; that about midnight, the vessel struck adrift; that then the whole scope of the cables were paid out till they all bore a strain, when she fetched up; that the gale continued on the following day to increase, and the sea being very heavy, at one o'clock she struck adrift again and dragged three miles, when she brought up; that the gale then increased to almost a hurricane, she ripped up the windlass, parted the chain cable, and commenced drifting again, the whole scope of both cables being paid out. That she then between eleven and twelve o'clock brought up about three quarters of a mile below Craney Island in two and a half fathoms water, amongst and in sight of a number of other vessels, that she then thumped or struck on the shoals on a bank, and her head swinging around to the westward, brought her broadside to the wind and heavy sea; that the captain, in this situation, finding no possible means of saving the vessel or cargo, and preserving the crew, slipped his cables, and ran her on shore for the safety of the crew and preservation of the vessel and cargo, that the vessel run far upon the bank, where, after the storm, she was left high and dry, and it was found impracticable to get her off.

" We find that the plaintiffs in this action were the owners of the said brig; the value of the said brig was $3000; that one-third part of the brig had been insured by the said Columbian Insurance Company; that no insurance had been effected for the remaining two-thirds. We further find, that the whole of the cargo on board said brig was of the value of $5335; of which the said Columbian Insurance Company insured $4920. We further find, that the cargo was afterwards taken out safely, and that the vessel, her tackle, &c., were sold for the sum of $256 40. If, on the matter aforesaid, the law be for the plaintiffs, then we find for the plaintiffs, and assess their damages to the sum of fifteen hundred dollars; and if the law be for the defendants, then we find for the defendants."

In August, 1825, the Circuit Court gave judgment in favour of the plaintiffs, for $1249, and the defendants prosecuted this writ of error.

The cause was argued by Mr. E. J. Lee, and Mr. Jones, for the plaintiffs in error; and by Mr. Semmes, and Coxe for the defendants.

The counsel for the plaintiffs in error contended,

[Columbian Insurance Company *vs.* Ashby and Stribling et al.]

1st. That the plaintiffs in the Circuit Court, have not shown such a case as authorized any verdict against them.

2d. That the special verdict does not find such facts as authorize the judgment of the Circuit Court.

3d. If the defendants are liable at all for an average loss, the plaintiffs have already, in their action on the policy upon the vessel, obtained judgment for $2000; which including the amount of the sales of the vessel makes $2256 40, being more than the amount insured on the vessel, and the average loss, as reported by the auditor.

4th. That the facts which were proved by the survey and depositions in the suit on the policy on the vessel, form a part of the special verdict in this case. If they do, then the judgment of the Circuit Court ought to have been for the plaintiffs in error; of if the evidence in the record of this case is uncertain, then, for this reason, the verdict ought to be set aside.

The Court having considered the agreement made before the trial, as excluding all the points presented on the part of the plaintiffs in error from examination, except the question of the liability of the plaintiffs in error as the insurers on the cargo of the brig Hope, for an average contribution for the loss of the vessel, the arguments on that question are alone given.

Mr. Lee and Mr. Jones contended, that the maritime law imposed on the owners of the cargo no obligation to contribute, unless the vessel was saved. The total loss of the vessel exempted the cargo from contribution. Cited 9 Johns. Rep. 9. Phill. on Insurance, 339.

It is admitted that whatever the master of a vessel, in distress, does for the general benefit of the whole, is binding on all interested, and all are responsible for his acts. Cited Lex Mercatoria. Stevens on Insurance. 2 Wash. C. C. R. 299. 2 Serg. and Rawle, 331. But in this case, the acts of the master were not of this character; and a very important part of the duty imposed upon him by the perils to which he was exposed, was omitted. He did not consult the officers of the vessel, before the vessel was run on shore.

There must be shown an inevitable necessity, for the stranding of the vessel; and that the same was the sole cause of the saving of the vessel and cargo; to create an obligation by the cargo to contribute; and the special verdict should have found all the facts. The facts are not found, but the evidence of the facts. The verdict only says, that the captain finding the existence of the necessity ran the vessel on shore. It is denied that the cases cited by the counsel for the defendants in error are authority in this Court. The principle of the maritime law is, that the running the vessel on shore must be for the common benefit of all the property, both the vessel and the cargo; and this cannot be done by the absolute loss of the vessel. The captain had no authority to do an act of this kind. The sacrifice cannot be made for the benefit of what is absolutely and totally destroyed by it. The sacrifice must not be for the vessel, the cargo

or the passengers, but for all; and it must be so far successful as that part shall be saved by it.

We must look to the Roman Code for the principles which are to decide this question. It must be decided by principles of public law. Cited, 9 Johns. Rep. 9, and the cases referred to. The authorities are clearly in favour of the case there decided; and a great many of the authorities in the English writers concur on the question.

All the law upon this question is derived from the Rhodian law; and by that law the salva navi is indispensable to create the liability for the contribution by the cargo for the injury done to the vessel. The saving of the vessel is essential. Cited, Holt on Shipping, ch. 7; Consolato del Mare by Boucher; Molloy's Commercial Law.

It is all-important that the question presented by this case shall be decided, and that the law of average shall be uniform in the United States. Different rules should not prevail in the states of the United States. A resort to the first principles of the maritime law, and ascending to the fountains of the code, will alone enable the Court to come to a decision which will have this influence and effect.

Mr. Semmes and Coxe for the defendants, contended, that the special verdict in the case shows that the running the vessel ashore was a voluntary stranding and loss of the brig for the preservation of the vessel, crew and cargo; and that such stranding and loss of the brig, the cargo being saved, entitles the defendants in error to recover of the owners of the cargo (or of the underwriters, their substitutes) contribution as for a general average.

Mr. Semmes for the defendants in error.

This is the case of a special verdict, finding all the facts in evidence which are material to the question before this Court. The facts found are briefly these: That the brig Hope, on a voyage from Alexandria to Barbadoes, was assailed by a violent storm while proceeding down Chesapeake bay in order to get out to sea; that she was for several days pressed by the fury of the winds and waves, and to prevent drifting on a lee shore, all her anchors were, at different times, let go and the cables paid out until they all bore a strain. That while in this situation the violence of the storm increased until the destruction of the vessel, crew, and cargo seemed inevitable. Finding there was no hope if he remained at anchor, certainly none if he attempted to breast the fury of the storm, and that nothing remained for him but the last resort of running the vessel on shore in order to save all or something, the captain resolved on this desperate step. Accordingly, the vessel, then riding at anchor, the captain slipped his cables and ran her ashore, in the words of the special verdict, " for the safety of the crew and the preservation of the vessel and cargo." The vessel ran high and dry, and it was found impracticable to get her off. She proved a total loss; and the crew and cargo were saved. The cargo was reshipped in another

vessel; and the owners of the vessel now are suing the underwriters on the cargo for contribution to an average loss of the vessel and freight, because of a voluntary sacrifice of that vessel and freight for the benefit of all; the result being the preservation of the cargo. The act was done calmly and voluntarily for the common safety. The question now to be determined is, whether the part saved (the cargo) shall contribute to the parts lost, (the vessel and freight,) in general average.

The question presented to this Court is one of great importance to the commercial world. It has never been settled by the tribunal of highest resort in any country, and now, for the first time, comes up for final adjudication. The maritime writers of Europe have held opposite and conflicting opinions. Bynkershoek, Jacobsen, Valin, Voet, and Browne, have maintained the doctrine for which the defendants in error are now contending. Emerigon, Stevens, and Huberus stand nearly alone on the opposite side. The marine ordinances of the European states have been uniform in their provisions: those of Antwerp, Konigsberg, and Friezeland, have been for the doctrine we support. The Ordonanza de Bilboa has embodied the same just and enlightened view taken by Bynkershoek and the other writers and ordinances named; while to the Rhodian law, as handed down to us by the civilians, though containing no express provision for the case, we look for the foundation and the reason of our rule. The Courts have been in conflict likewise. The marine judges of Amsterdam decided against the contribution, in such a case; but the fallacy of their judgment has been ably exposed by Bynkershoek. The question has never come directly before any Court, under the jurisdiction of Great Britain. In this country the Supreme Court of New York have decided against the contribution. The Circuit Court of the United States for the third circuit; and the Supreme Court of Pennsylvania have determined in favour of it. The Court below awarded a judgment of contribution on this special verdict; the present writ of error has been prosecuted, and this Court are now to pronounce and say, which is the better and the juster rule.

The law of Rhodes, "De jactu," established the principle of average, in cases of jettison of part of the cargo for the safety of all. The provision is express in respect to jettison, but no other case is named. The expression of one case will not, however, exclude others from coming within its reason. The case put in the Rhodian law is by way of example or illustration, and not as implying that average is exclusively confined to cases of jettison. To show this clearly, we need only resort to the authority of Emerigon and his followers. With a solitary and almost ludicrous exception they admit that if a ship be voluntarily stranded, when in peril at sea, when chased by an enemy or by pirates, for the common safety, and be subsequently gotten off and proceed on her voyage, then, that the cost of repairs shall afford a claim to the ship owners for a general average. If the ship be partially destroyed there shall be an average; if the loss be

total, there shall be none.    Such is the doctrine of Emerigon, and of the Supreme Court of New York.

Stevens in his work on Average, p. 36, has gone further, and denies the average in cases of partial damage to the ship, as well as of total loss.    He admits the law to be against him; he admits the uniform practice at Lloyds to be against him, as well as the opinion of eminent members of the English bar.    We may pass him by, and content ourselves with those who admit the contribution in cases of partial loss.    Now, it is from the Rhodian law that the advocates of this latter doctrine draw their authority.    Let us go back to the great and fundamental principle of average established by that law, and see if it does not support a broader and more equitable construction.

To afford a case for applying the doctrine of average, the loss sustained must be a voluntary loss for the common safety, when all are in imminent peril; and there must be a saving of some part thereby.    The part saved shall contribute to the part lost.    If goods are thrown overboard in a storm for the purpose of lightening the vessel, and she and the remaining goods are saved, all shall come into contribution for the part lost; nemo debet locupletari aliena jactura.-    If damage be done voluntary to a ship to effect a jettison, as by cutting her sides, or the masts or rigging are cut away in a storm to lighten the ship, these losses are subjects of a general average contribution. So, the doctrine of our opponents in cases of a voluntary stranding, where the ship is got off, with partial damage.    But if the ship is totally lost, they say there shall be no contribution.    Do not the reason and the equity of the rule as to average, apply as clearly and forcibly to cases of a total loss as to cases of a partial loss?    Where is the ground for drawing a distinction?    If a distinction be drawn as contended for, it involves its advocates in this glaring inconsistency and injustice; that where a party has suffered a voluntary minor evil for the benefit of another, that other shall contribute to his loss out of the benefit resulting; but if, perchance, the voluntary suffering encountered should reach beyond a certain limit, and the sufferer should lose every thing he risked, then he is unworthy of any compensation.    Where there is a small equity, there shall be relief; where the equity is increased tenfold, there shall be none. Such is the doctrine of the plaintiffs in error.    It remains for those who draw the distinction to show the necessity and the reason of it.

It is contended that the captain should have consulted with his officers and crew before stranding the vessel, and that the special verdict does not find this fact.    It has long since been conclusively settled that such previous consultation and deliberation are not necessary.    Sims *vs.* Gurney and Smith, 4 Binney, 513.

It is likewise held on the other side, that even if there should be contribution for the vessel in this case, there should be none for the freight.    There is no foundation for this objection.    The freight follows the fate of the vessel; if the vessel be lost, the freight is also

lost. If there was any merit in the voluntary stranding of the vessel whereby she was lost, the same merit attaches in respect to freight; for that was destroyed by the self same voluntary act.

Mr. Semmes referred to the following authorities :—2 Kent's Com. 191. Marsh. on Ins. 535 et seq. Da Costa *vs.* Newnham, 2 Term. Rep. 407. The Copenhagen, 1 Rob. Adm. Rep. 494. Walden *vs.* Leroy, 2 Caines, 263. Henshaw *vs.* Marine Ins. Co., 2 Caines 274. Jacobson's Sea Laws, 346. 348. 350. 2 Bro. Civ. and Adm. Law, 199. Bynk. Quæst. Im. Priv. b. 4, ch. 24, tit. de jactu, 424. 2 Magens, 200. Voet, Com. ad Pand., 690. Valin, 168. 1 Emerigon, 602. 612. 615. Sims *vs.* Gurney and Smith, 4 Binney, 513. Gray et al. *vs.* Waln, 2 Serg. and Rawle, 229. Caze et al. *vs.* Reilly, 3 Wash. C. C. Rep. 298. Story's Abbott, 342. 349, note. Bradhurst *vs.* Col. Ins. Co., 9 Johns. Rep. 9. 3 Kent's Com. 233. Stevens on Average, 36. Eppes *vs.* Tucker, 4 Call. 346. 4 Peters, 139. 11 Serg. and Rawle, 69.

Mr. Justice STORY delivered the opinion of the Court.—

This is the case of a writ of error to the Circuit Court of the District of Columbia, for the county of Alexandria. There are many irregularities in the proceedings on the record; but as, in our judgment, they are all waived or cured by the agreement of the counsel spread upon the record, which is, as to the matters in controversy in the suit, conclusive upon the parties, and constituted the basis of the proceedings at the trial and of the special verdict on which the judgment was given for the original plaintiffs in the Court below, it is unnecessary to discuss their intrinsic force or validity. The main question in the case is, whether the voluntary stranding of a ship in a case of imminent peril, for the preservation of the crew, the ship, and cargo, followed by a total-loss of the ship, constitutes a general average, for which the property saved is bound to contribution. We say that this is the main question, because the special verdict finds that there was a voluntary running on shore of the brig Hope; that there was no other possible means of preserving the crew, the ship, and the cargo; that the running ashore was for this express object; and that, after the storm was over, the brig was left high and dry, and it was found impracticable to get her off: so that the facts are sufficiently precise and full to present the question of general average in its most simple and comprehensive form. Accordingly our attention will, in the first instance, be addressed to the consideration of it.

Upon this question the maritime jurists of continental Europe are not entirely agreed in opinion; and our own jurisprudence presents conflicting adjudications. It becomes the duty of this Court, therefore, to examine and weigh these opposing opinions, and to ascertain, as far as it may, the true principle which ought to govern us on the present occasion.

It is admitted on all sides, that the rule as to general average is derived to us from the Rhodian law, as promulgated and adopted in

the Roman jur. sprudence. The Digest states it thus. If goods are thrown overboard in order to lighten a ship, the loss incurred for the sake of all shall be made good by the contribution of all. Lege Rhodia cavetur, ut si levandæ navis· gratiâ jactus mercium factus est, omnium contributione sarciatur, quod pro omnibus datum est. Dig. lib. 14, tit. 2, c. 1. That the case of jettison was here understood to be put as a mere illustration of a more-general principle, is abundantly clear from the context of the Roman law, where a ransom paid to pirates to redeem the ship is declared to be governed by the same rule. Si navis a piratis redempta sit—omnes conferre debere. Dig. lib. 14, tit. 2, c. 2, s. 3. The same rule was applied to the case of cutting away or throwing overboard of the masts or other tackle of the ship to avert the impending calamity; Dig. lib. 14, tit. 2, c. 3, c. 5, s. 2; and the incidental damage occasioned thereby to other things. Without citing the various passages from the Digest which authorize this statement, it may be remarked that the Roman law fully recognised and enforced the leading limitations and conditions to justify a general contribution, which have been ever since steadily adhered to by all maritime nations. First, that the ship and cargo should be placed in a common imminent peril; secondly, that there should be a voluntary sacrifice of property to avert that peril; and, thirdly, that by that sacrifice the safety of the other property should be presently and successfully attained. Hence, if there was no imminent danger or necessity for the sacrifice, as if the jettison was merely to lighten a ship too heavily laden by the fault of the master in a tranquil sea, no contribution was due. See Abbott on Shipp. p. 3, ch. 8, s. 2, 1 Emerig. Assur. ch. 12, s. 39, art. 7. p. 604. Ib. s. 40, p. 605. So, if the ship was injured or disabled in a storm, without any voluntary sacrifice; or if she foundered or was shipwrecked without design, the goods saved were not bound to contribution. Dig. lib. 14, tit. 2, c. 2, s. 1. Ib. c. 7. 1 Emerig. on Assur. ch. 12, s. 39, p. 601–603. On the other hand, if the object of the sacrifice was not attained; as if there was a jettison to prevent shipwreck, or to get the ship off the strand, and in either case it was not attained, as there was no deliverance from the common peril, no contribution was due. Dig. lib. 14, tit. 2, c. 5, c. 7. 1 Emerig. on Assur. ch. 12, s. 41, p. 612, p. 616. The language of the Digest upon this last point is very expressive. Amissæ navis damnum collationis consortio non sarcitur per eos, qui merces suas naufragio liberarunt—nam hujus æquitatem tunc admitti placuit, cum jactus remedio cæteris in communi periculo, salvâ, nave, consultum est. It is this language, which seems in a great measure to have created the only doubt among the commentators as to the extent and operation of the rule; some of them having supposed that the safety of the ship (salvâ nave) for the voyage, was in all cases indispensable to found a claim to contribution; whereas others, with far more accuracy and justness of interpretation, have held it to apply as a mere illustration of the general doctrine, to a jettison, made in the particular case, for the very purpose of saving the ship

and the residue of the cargo. In truth, the Roman law does not proceed upon any distinction as to the property sacrificed, whether it be ship or cargo, a part or the whole; but solely upon the ground that the sacrifice is voluntary, to avert an imminent peril; and that it is in the event successful by accomplishing that purpose. And, therefore, Bynkershoek has not hesitated to declare the general principle to be, that whatever damage is done for the common benefit of all is to be contributed for by all; and that as this obtains in a variety of cases, so especially by the Rhodian law it obtains in cases of jettison. Generaliter placere potest, damnum pro utilitate communi factum, commune esse, utque in variis speciebus id obtinere aliunde constat, sic ex lege Rhodia, cum maxime obtinet in jactu. Bynker. Quest. Priv. Juri. lib. 4, ch. 24, introd.

These remarks seem proper to be made in order to meet the suggestions thrown out at the argument, with reference to the actual bearings of the Roman law on the question before the Court; and they may also serve in some measure to explain the true principles by which the question ought to be decided.

In examining the foreign jurists, it will be found that there is far less disagreement among them than has been generally supposed. All of them that have come within our own researches, or those of counsel, admit that a voluntary stranding of the ship constitutes a case of general average, if there is not a total loss of the ship. Emerigon in one passage lays down the doctrine in the following broad language. "It sometimes happens that, to escape from an enemy or to avoid an absolute shipwreck, the ship is run on shore in a place which appears the least dangerous. The damage suffered on this account is a general average, because it has been done for the common safety." 1 Emerigon Assur. ch. 12, s. 13, p. 408. And for this he relies upon the Consolato del Mare, upon Roccus, Targa, Caseregis, and Valin. It is true that in another place he says, "The damages which happen by stranding are a simple average for the account of the proprietors;" citing the French ordinance: and then adds, "But it will be a general average if the stranding has been voluntarily made for the common safety, provided always that the ship be again set afloat; for if the stranding be followed by shipwreck, then it is, save who can." 1 Emerigon Assur. ch. 12, s. 13, p. 614. And he then refers to the case of jettison, where the ship is not saved thereby, in which case there is no contribution. Emerigon Assur. ch. 12, s. 13, p. 616. Now the analogy between the two cases is far from being so clear or so close as Emerigon has supposed. In the case of the jettison to avoid foundering or shipwreck, if the calamity occurs, the object is not attained. But in the case of the stranding, whatever is saved, is saved by the common sacrifice of the ship; although the damage to her may have been greater than was expected. Surely the question of contribution cannot depend upon the amount of the damage sustained by the sacrifice; for that would be to say, that if a man lost all his property for the common benefit, he should receive nothing; but if he

lost a part only he should receive full compensation. No such principle is applied to the total loss of goods sacrificed for the common safety: why then should it be applied to the total loss of the ship for the like purpose? It may be said that unless the ship is got off the voyage cannot be performed for the cargo; and the safety and prosecution of the voyage are essential to entitle the owner to a contribution. But this principle is nowhere laid down in the foreign authorities; and certainly it has no foundation in the Roman law. It is the deliverance from an immediate impending peril, by a common sacrifice, which constitutes the essence of the claim. The Roman law clearly shows this; for by that law it was expressly declared, that if by a jettison in a tempest, the ship was saved from the impending peril, and afterwards was submerged in another place, still contribution was due from all the property which might be fished up, and saved from the calamity. Sed si navis, quæ intempestate jactio mercium unius mercatoris, levata est, in alio loco submersa est, et aliquorum merces per urinatores extractæ sunt, data mercede, rationem haberi debere ejus, cujus merces in navigatione levandæ navis causa jactæ sunt ab his, qui postea sua per urinatores servaverunt. Digest, lib. 14, tit. 2, l. 4, s. 1. Boucher Instit. au Droit Maritime, (1805,) p. 449. Abbott on Shipp. part 3, ch. 8, s. 13. And, besides, in a case like that now before us, the cargo might be transshipped in another vessel, and the voyage be successfully performed. But, in truth, it is the safety of the property, and not of the voyage, which constitutes the true foundation of general average. If the whole cargo were thrown overboard to insure the safety of the ship, the voyage might be lost; but nevertheless the ship must contribute to the jettison. Why, then, if the ship is totally sacrificed for the safety of the cargo, should not the same rule apply? Suppose a ship, with a cargo of cotton on board, is struck by lightning and set on fire, and it becomes indispensable for the salvation of the cargo to sink the ship on a rocky bottom, and she is thereby totally lost—would not this constitute a case of contribution? Suppose a cargo of lime were accidentally to take fire in port, and it became necessary, in order to save the ship, that she should be submerged, and the cargo was thereby totally lost, but the ship was saved with but a trifling injury; would it not be a case of contribution?

As far as we know, Emerigon stands alone among the foreign jurists, in maintaining the qualification that it is necessary to a general average that the ship should be got afloat again after a voluntary stranding. Valin certainly does not support it; for he only states, that if to avoid a total loss by shipwreck or capture, the master runs his vessel ashore, the damage which he shall suffer on that account, and the expenses and the charge of putting her afloat again, are general average; and he gives the reason, because all has been done for the common safety. 2 Valin, Com. 168. Ib. 205, 207, 209. See, also, 2 Bell. Com p. 589, 5 edit. 1826. Beyond all doubt, Valin is correct in this statement; but then he was merely discussing the

point, whether the expenses of getting the ship afloat was, when she was got off, a subject of general average; and not the point, whether, if the ship was totally lost, the whole loss was not a general average. His reasoning was diverso intuitu.

On the other hand, the Consolato del Mare, one of the earliest and most venerable collections of maritime law, lays down the general rule, without any such qualification. Consolato del Mare, ch. 192, 193; Boucher, Consult de la Mer, ch. 195, 196, s. 487—494; as also does Roccus, in his Treatise de Navibus et Naut. Roccus de Nav. et Naut. n. 60. Indeed, it may be found stated in the same general form in the Roman law, where it is said, without referring to the manner and extent of the damage, that the whole damage voluntarily done to the ship for the common good, must be borne by a common contribution. Sed si voluntate vectorum, vel propter aliquem metum id detrimentum factum sit, hoc ipsum sarciri oportet. Dig. Lib. 14. tit. 2, c. 2, s. 1, c. 3, l. 5, s. 1. And Vinnius in his commentary, after speaking of an involuntary shipwreck, in which case there shall be no contribution, adds; that the damage suffered by a sacrifice made for the good of all, to avoid a common danger, is to be made good by the contribution of all. Vinnius Packium ad Legem Rhodiam, c. 5. Voet, in his commentary on the Digest, is far more explicit, and asserts, that if the ship is voluntarily run on shore for the common safety, and thus has perished, the goods being saved, contribution is due. Voet ad Pand. lib. 14, tit. 2, s. 5. Bynkershoek has treated the very question in his usual clear and luminous manner. After citing a decision of certain maritime judges of Amsterdam, who held that if a cable of the ship was voluntarily cut to avert a peril, and thereby the anchor as well as the cable was lost, contribution should not be made for the anchor, because there could not be said to be a voluntary jettison; and who, also, for the like reason, held, that if the ship was run on shore and lost, the goods should not contribute, because there could be no contribution unless the ship was saved, (quia nihil contribuitur, nisi salvâ nave :) he expressed his pointed disapprobation of the decision, saying, that it exhibited very little acuteness, for in all such cases the goods cannot otherwise be saved, and the peril compels us to the act; and the safety of the ship, in case of a jettison, is not otherwise sought than, the ship being saved, the goods may thereby be saved: and, therefore, the goods saved, and the damage occasioned thereby, ought to be subject to contribution. And he accordingly holds, that the loss of the ship, like the loss of her tackle, is to be deemed a general average, wherever she is sacrificed by a voluntary stranding for the general safety; insisting that this doctrine is fully supported by other authorities cited by him. The doctrine of the Amsterdam judges upon the principal point before them, has been utterly repudiated by all maritime nations in later times, as it seems to have had no foundation in any antecedent adjudications. See Cleirac Us et Coutumes de la Mer, art. 21—23. Indeed, there are early positive ordinances of some of the maritime states, which positively provide

for the very case of a total loss of the ship by a voluntary stranding as a general average; (as, for example, the ordinance of Konigsburg,) and others in which it is not usually, if not necessarily, implied. See 2 Magens, 200, &c. It deserves consideration, also, that the modern maritime writers, Jacobsen, Benecke, and Stevens, all admit this is to be the result of the foreign jurisprudence and ordinances. Jacobsen Sea Laws, by Frick, b. 4, ch. 2, p. 358. Benecke on Insur. 219—221. Stevens on Average, 33, 34, edit. 1824. See 2 Bell's Com. p. 589, 5th edit. 1826. Stevens, also, notwithstanding his own opposition to the rule, admits that it appears to have been the practice at Lloyd's, as far back as the time of Mr. Weskett; and that recent opinions of eminent counsel in England, taken on the very point, fully admit and confirm it. Stevens on Average, 33—35, edit. 1824. Dr. Browne, in his Treatise on the Civil and Admiralty Law, adopts the same opinion, saying, "It has been disputed whether, when a ship was voluntarily run ashore and lost, but the cargo saved, it should contribute, because the rule was that no contribution took place when the ship was lost. But it was truly held that the rule would be absurdly applied to a case where the ship was grounded purposely to save the merchandise, and that with success." 2 Browne's Civil and Adm. Laws, 199

From this review of some of the leading opinions in foreign jurisprudence, brief and imperfect as it is, it seems to us that the weight of authority is decidedly in favour of the present claim for general average.

In respect to domestic authorities, we have already had occasion to intimate that there are conflicting adjudications. In Bradhurst vs. The Columbian Insurance Company, 9 Johns. Rep. 9, the Supreme Court of New York held that where a ship is voluntarily run ashore for the common good, and she is afterwards recovered, and performs the voyage, the damages resulting from this sacrifice, are to be borne as a general average. But that where the ship is totally lost, it is not a general average. The ground of this opinion, as pronounced by Mr. Chief Justice Kent, seems mainly to have been, that this was the just exposition of the Rhodian and Roman law, and that the weight of authority among foreign jurists clearly supported it. With great respect for the learned Court, we have felt ourselves compelled to come to an opposite conclusion as to the true interpretation of the Roman text, and of the continental jurists. We agree with the learned Court, that when a ship is voluntarily run ashore, it does not, of course, follow that she is to be lost. The intention is not to destroy the ship, but to place her in less peril, if practicable, as well as the cargo. The act is hazardous to the ship and cargo, but it is done to escape from a more pressing danger; such as a storm, or the pursuit of an enemy, or pirate. But, then, the act is done for the common safety; and if the salvation of the cargo is accomplished thereby, it is difficult to perceive why, because from inevitable calamity the damage has exceeded the intention or expectation of the parties, the whole sacrifice should be borne by

the ship owner, when it has thereby accomplished the safety of the cargo. If one mast is cut away, and thereby another mast is unexpectedly and unintentionally also carried away by the falling of the former, it has never been supposed that both did not come into the common contribution. If, in the opening of the hatches, and the jettison of some goods to lighten the ship, other goods are unexpectedly and unintentionally, but accidentally, injured or destroyed, it has never been doubted that the latter were to be brought into contribution, to the extent of the loss or damage done to them. It is not like the case of saving from a fire, tamquam ex incendio, save who can. But it is like the saving of the cargo from destruction by fire, by the scutling and submersion of the ship. Upon principle, therefore, we cannot say that we are satisfied that the doctrine of the Supreme Court of New York can be maintained; for the general principle certainly is, that whatever is sacrificed voluntarily for the common good, is to be recompensed by the common contribution of the property benefited thereby.

But the same question has come before other American Courts; and has there, with the full authority of the New York decision before them, received a directly opposite adjudication. Our late brother Mr. Justice Washington, than whom few judges had a clearer judgment, or more patient spirit of inquiry, had the very point before him in Caze vs. Reilly, 3 Wash. Cir. C. Rep. 298; and after the fullest argument, and the most extensive research into foreign jurisprudence, he pronounced an opinion that there was no difference between the case of a partial and that of a total loss of the ship, by a voluntary stranding, and that both constituted equally a case of general average. The Supreme Court of Pennsylvania had a short time before, in Sims vs. Gurney, 4 Bin. Rep. 513, adopted the same doctrine; and again in Gray vs. Waln, 2 Serg. and Rawle, 229, upon a re-argument of the whole matter, with all the subsequent lights which could be brought before it, adhered to that opinion: and this has ever since been the established law of that Court. We have examined the reasoning in these opinions, and are bound to say that it has our unqualified assent: and we follow without hesitation the doctrine, as well founded in authority and supported by principle, that a voluntary stranding of the ship, followed by a total loss of the ship, but with a saving of the cargo, constitute when designed for the common safety a clear case of general average.

Having disposed of the main question, it now remains to say a few words as to some minor points suggested at the argument. In the first place, as to the objection, that here the stranding does not appear to have been made after a consultation with the officers and crew, and with their advice. There is no weight in this objection. A consultation with the officers may be highly proper in cases which admit of delay and deliberation, to repel the imputation of rashness and unnecessary stranding by the master. But if the propriety and necessity of the act are otherwise sufficiently made out,

there is an end of the substance of the objection. Indeed, in many if not most of the acts done on these melancholy occasions, there is little time for deliberation or consultation. What is to be done must often, in order to be successful, be done promptly and instantly by the master, upon his own judgment and responsibility. The peril usually calls for action, and skill, and intrepid personal decision, without discouraging others by timid doubts or hesitating movements. The very point was decided in Sims *vs.* Gurney, 4 Bin. Rep. 513, upon ground entirely satisfactory. And it has been well remarked by more than one maritime jurist, that too scrupulous an adherence to forms on such occasions, has justly a tendency to excite suspicions of fraud. Targa has stated, that in all his experience of sixty years, he never knew of but five cases of regular jettisons, all of which were suspected of fraud, because the forms had been too well observed. Abbott on Shipp. pt. 3, ch. 8, sec. 3. 1 Emerig. Assur. ch. 12, sec. 40, p. 605.

The only other remaining point is, whether freight ought to have been brought into the account, either as a part of the loss, or of the contributory value. The Auditor's Report which was adopted by the Court, allowed the freight as a part of the loss, and also of the contributory value. It is perfectly clear that if a part of the loss, the freight ought also to contribute. And it seems to us, that as by the loss of the ship, the freight was totally lost for the voyage, it was properly included in the loss, and as a sacrifice by the ship owner for the common benefit. The goods, if reshipped in another vessel must be presumed to be so for a new and correspondent freight to be borne by the ship owner or the shipper, according as the one or the other should seek to perform the entire voyage for his own benefit. The ship owner could only earn the original freight by a transshipment; and if he abandoned that intent, the shipper must enter into a new contract and enterprise with others. In the case of Caze *vs.* Reilly, 3 Wash. C. C. Rep. 298, although the objection as to freight was saved, it was abandoned at the argument. In the case of Gray *vs.* Waln, 2 Serg. and Rawle, 229, the freight lost was expressly allowed in the general average. No other objections have been taken to the Auditor's Report, or his adjustment thereof; and therefore upon the other particulars of that adjustment we give no opinion.

Upon the whole our opinion is that the judgment of the Circuit Court ought to be affirmed, with costs.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States, for the District of Columbia, holden in and for the county of Alexandria, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs and damages at the rate of six per centum per annum.