## THE ALCONA.

(*District Court, E. D. Illinois.*   1881.)

1. GENERAL AVERAGE.

   Where a vessel, in the course of her voyage, becomes stranded upon the bank of a river or harbor, and the circumstances are such as to show there is no danger to be apprehended from her lying there, the expense of getting her off is not the subject of a general average contribution.

In Admiralty.

This was a libel *in personam* by Charles Bewick *et al.*, owners of the propeller Alcona, against the Detroit Fire & Marine Insurance Company, to recover for a general average contribution. The policy insured the propeller against total loss and general average only in the sum of $10,000. The answer denied that the libel set up a proper claim for general average. By a stipulation of facts it appeared that the Alcona, with a cargo of 37,000 bushels of corn, left Toledo, Ohio, for Buffalo, and while proceeding down the Maumee river, when on the range stakes, brought up on the bottom, and was unable to get off without assistance; that she lay about 20 feet outside of the channel; that while she was thus stranded it was deemed advisable to lighten her of a portion of her cargo, and accordingly about 5,000 bushels were removed from the propeller to a barge, and the propeller was then floated by the assistance of the propeller Alpena and certain tugs.

*Otto Kirchner*, for libellants.

*F. H. Canfield*, for claimants.

BROWN, D. J. So far as the facts of this case are concerned, I am satisfied that there is no evidence which would be proper to go to a jury that the Alcona was in any danger of total loss or serious damage to herself or cargo. There is no allegation to that effect in the libel. She lay upon an even keel, upon a bank of sand, clay, and mud, several miles from the mouth of the Maumee, protected from the heavy winds and sea of the open lake. A rise in the water would have floated her off without assistance, and it was very improbable that any such fall would occur as would put her in any serious peril. She was a little out of the channel, and there was plenty of room for other vessels to pass without fear of collision. The weather was good, and for all that appears she was as safe as if she were lying at her own dock. Nor should I be justified, from the testimony, in finding the existence of a usage of insurance companies to treat expenditures of this kind as general average. It is true that evidence was offered tending to show that in a number of similar cases, running through a series of years, expenses incurred under like circumstances had been allowed; but there is nothing to show a uniform and certain

usage to that effect. A custom cannot thus be proved by isolated cases. *Cope* v. *Dodd*, 13 Pa. St. 33.

We are, then, left to deal with the naked question whether expense incurred in getting off a vessel stranded in a place of safety can be the subject of a general average contribution. Cases in which steam-power is employed in hauling off stranded vessels are not strictly cases of general average, but are treated in the books as rather in the nature of general average. The law upon this subject originated in cases of jettison, and most of the earlier cases relate to actions brought to recover contributions for goods thrown overboard, or masts, cables, or rigging sacrificed to relieve vessels in distress. After the invention of steam-power the same principle was extended to expenses incurred for tugs hired to haul off stranded vessels from a dangerous shore; but I do not understand that the general principle upon which allowances of this kind are made has been at all enlarged in this new class of cases; and I apprehend the expense of tugs for this purpose would not be allowed in any case where, if other equally prudent and efficacious measures of relief had been adopted, (such, for example, as a jettison of a part of the cargo,) the losses thereby voluntarily incurred would not be held the subject of a general average contribution. It would be unreasonable to say that a vessel in peril may select one method of relief and obtain an allowance by way of general average, while, if she selects another method of accomplishing the same thing, the loss would be hers alone. Hence it seems to me quite clear that we must look only to the circumstances in which this vessel was placed, and not to the particular measures employed, to determine whether the case is a proper one for contribution.

Now, referring to the authorities upon the subject, I take it that nothing is better settled than that a voluntary sacrifice of a portion of the vessel and her cargo can only be justified to save the remainder from an imminent danger of loss.

In 2 Arnold, Insurance, 883, it is said: "It is an undoubted requisite of general average loss that it should have been incurred under pressure of a real and imminent danger." And at page 884 it is said: "The sacrifice must have been made under an urgent pressure of some real and immediately-impending danger, and must have been resorted to as the sole means of escaping destruction."

In the case of the *Columbian Ins. Co.* v. *Ashby*, 13 Pet. 331, in which it was held that the voluntary stranding of a ship in imminent peril

constitutes a case of general average, Mr. Justice Story remarked that—

"The Roman law fully recognized and enforced the leading limitations and conditions to justify a general contribution, which have ever since been steadily adhered to by all maritime nations: (1) That the ship and cargo should be placed in a common imminent peril; (2) that there should be a voluntary sacrifice of property to avert that peril; and (3) that by that sacrifice the safety of the other property should be presently and successfully attained. Hence, if there was no imminent danger, or necessity for the sacrifice, as if the jettison was merely to lighten a ship, too heavily laden by the fault of the master in a tranquil sea, no contribution was due. The contention of libellants, that the expenses incurred in this case were for the joint benefit of the ship and cargo, (because the voyage might otherwise have been indefinitely prolonged,) is expressly declared in this case to be no ground for a general average contribution. It may be said that unless the ship is got off the voyage cannot be performed for the cargo, and the safety and prosecution of the voyage are essential to entitle the owner to a contribution. But this principle is nowhere laid down in the foreign authorities; and certainly it has no foundation in the Roman law. It is the deliverance from an immediate, impending peril, by a common sacrifice, which constitutes the essence of the claim. * * * But, in truth, it is the safety of the property, and not of the voyage, which constitutes the true foundation of general average."

In the subsequent case of *Barnard* v. *Adams*, 10 How. 303, it is said that "in order to constitute a case for general average, three things must concur, the first of which is a common danger; a danger in which ship, cargo, and crew all participate; a danger imminent and apparently inevitable, except by voluntarily incurring the loss of a portion of the whole to save the remainder." Subsequent cases in the same court reaffirm the same principle. *The Hornet*, 17 How. 100; *The Ann Elizabeth*, 19 How. 162; *The Star of Hope*, 9 Wall. 203.

In his work on General Average, Mr. Lowndes states, as a fundamental rule, p. 4: "That after the cargo is in safety, the benefit it may derive from being carried in the ship to its place of destination, is not a ground for making it contribute towards the cost of repairing the ship, nor placing the ship in shape where she can be repaired;" citing *Powell* v. *Gudgeon*, 5 M. & S. 431, and *Sarquy* v. *Hobson*, 4 Bing. 131; *Duncan* v. *Benson*, 1 Exch. 537; 3 Exch. 644; *Job* v. *Langton*, 6 E. & B. 779.

None of the cases cited by libellants look towards any relaxation of the rule that imminent danger to the ship and cargo is an ingredient essential to a general average contribution.

In *Birkley* v. *Presgrave*, 1 East, 228, it was merely decided that an action of *assumpsit*, would lie by the owner of the ship to recover from the cargo its proportion of a general average loss; but the declaration in that case expressly alleged that the sacrifice was necessarily made in order to preserve the ship and cargo from perishing by storm.

In *Thornton* v. *U. S. Ins. Co.* 12 Me. 150, which was an action upon a policy of insurance, it appeared that the vessel, being on a voyage from Richmond to Bremen, was compelled to put into Cuxhaven, an intermediate port, for the preservation of the ship, cargo, and lives of the crew, So in the *Bedford Ins. Co.* v. *Parker*, 2 Pick. 1, it appeared that the vessel struck on a reef of rocks outside the harbor of New Bedford, at the distnnce of about nine miles from the town, but within 80 or 90 yards from the shore, and was in imminent peril from the sea, the tide flowing into and out of her, and filling the hold. The question was whether iron taken off the ship before the ship itself was gotten off was subject to contribution. In the case of *McAndrews*, v. *Thatcher*, 3 Wall. 347, the same question was considered, and Mr. Justice Clifford expressly says :

"It cannot be doubted that the ship and cargo were jointly exposed to a common peril, and were in imminent danger of being wholly lost. Such being the fact, it is clear that the expenses of saving the ship and cargo were a proper subject of joint and ratable contribution in general average by vessel, freight, and cargo, provided the vessel and cargo were saved by the same series of measures during the continuance of the common peril which created the joint necessity for the expense."

The continental writers are equally explicit to the point that imminent peril of loss is an essential ingredient in a claim for general average. Says Goirand, in commenting upon article 400 of the French Commercial Code :

"Four conditions are indispensable to general average, the absence of any one of which suffices to render the average particular. In order that the average be general, it is necessary (1) that the damages or expenses arise from the voluntary act of man; (2) that such voluntary action has had for object to save the ship and cargo from immediate danger of loss; (3) that such danger has equally menaced both ship and cargo; (4) that the voluntary sacrifice has been attended with beneficial results,—that is to say, has led to the preservation of the ship and cargo."

The civil-law courts are even stricter than ours in requiring a previous consultation with the crew, and parties interested in the cargo who may be on board. A report of the deliberation must be drawn

up, specifying the motive of the jettison, and enumerating the articles thrown overboard or damaged. This is signed by the persons who took part therein, and transcribed into the log-book. At the first port touched at the captain must, within 24 hours after his arrival, attest the statement contained in the deliberation.

So, in the elaborate work of Hoechster & Sacré, vol. 2, p. 946, it is said:

"The act [the basis of the claim for general average] should be a voluntary act agreed to after a consultation with the crew, and in the common interest. It should be justified by the fear of a peril certain and imminent, and have for its object to prevent a total or considerable loss by a less sacrifice." Page 960: "A jettison is justified only by extraordinary necessities, when it is a question of lightening the ship to prevent her foundering, by relieving her when she is stranded, or of quickening her speed to escape the pursuit of an enemy."

Section 702 of the Dutch Code provides for a case precisely like the one under consideration: "When a ship is prevented, from existing shoals or shallows or banks, from leaving the place of departure, or reaching her place of destination, with her full cargo, and a part thereof must be conveyed to the ship by or discharged into lighters, such lightering is not considered as an average." See, also, Caumont, title, "Avaries," §§ 31, 32, 33. These expenses are, however, allowed where the vessel is obliged to enter the harbor by a storm or the enemy's pursuit. Code of Portugal, art. 1816, §§ 14, 16, 18; Code of Spain, art. 936, § 5; Code of Italy, art. 509, §§ 10, 14; France, art. 400, §§ 7, 8. All of the continental Codes, so far as I have examined them, appear to restrict claims for general average to cases where a voluntary sacrifice is made to save the vessel and cargo from a greater loss. If the allowance of general average can be made in the case under consideration, I see no reason why it is not equally allowable whenever a tug or lighter is employed to assist a vessel over a bar at the port of departure or of destination, or to relieve a vessel whenever and wherever, in the course of her voyage, she may happen to touch the bottom, be her situation never so safe, if she happens to require assistance to get off. Such a ruling would be extending the doctrine of general average to cases never contemplated by any writer upon maritime law, either in Europe or America, to which my attention has been called.