WILLCOX, PECK & HUGHES v. AMERICAN SMELTING & REFINING CO.

(District Court, S. D. New York. December 27, 1913.)

1. SHIPPING (§ 195*)—GENERAL AVERAGE—EXPENSES SUBJECTS OF COMPENSATION—COMMON PERIL.

A steamship grounded in Raritan Bay, which is a land-locked harbor, by reason of the failure of tugs to meet her as ordered to tow her to her destination at Perth Amboy while the tide was sufficiently high, and owing to the prevailing wind the water was kept low for several days. Her bow was embedded in soft mud, and mud banks were formed around her by the action of the tides. Her stern was in deeper water, and there was danger that she might be slewed around by the wind and broken or strained amidships to the injury of a part of her cargo, which consisted of nitrates, the remainder being ore. Several unsuccessful attempts were made to float her by tugs assisted by her own engines in which her machinery was injured, and her master, believing her to be in peril, caused a part of her cargo to be lightered, and it was delivered at its destination. *Held*, that there was a common peril to ship and cargo, and that the expenses resulting from engine damage and cost of lightering were proper subjects of general average.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 618–621; Dec. Dig. § 195.*]

2. SHIPPING (§ 195*)—GENERAL AVERAGE—LIABILITY TO CONTRIBUTE—"COMMON DANGER."

"Common danger" which gives a right to contribution in general average does not mean equal danger, and that a part of the cargo of a stranded steamship was of a kind which was in little danger of injury does not relieve it of liability to contribute.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 618–621; Dec. Dig. § 195.*]

3. SHIPPING (§ 195*)—GENERAL AVERAGE—PERILS ENTITLING TO CONTRIBUTION.

If the master in making a sacrifice for the benefit of ship and cargo appears to have acted under an honest apprehension of imminent peril, there must be very strong evidence to overcome the presumption attaching to his opinion and to defeat the right to contribution in general average.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 618–621; Dec. Dig. § 195.*]

In Admiralty. Suit by Willcox, Peck & Hughes, trustees for the Steamship Trojan Company, Limited, owner of the British steamship Trojan, against the American Smelting & Refining Company, on general average bond. Decree for libelant.

J. Parker Kirlin, of New York City, for libelant.
Lawrence Kneeland, of New York City, for respondent.

HOUGH, District Judge. [1] The Trojan grounded in Raritan Bay, while in, or almost wholly in, the channel leading to her port of destination—Perth Amboy. The proximate cause of stranding was failure of the necessary tugs to reach her on time and as ordered, whereby she slowed and stopped so as to miss the height of the tide. She could not be expected to get through except at full high water. Thereafter the prevailing winds kept the water low for several days, and she did not float until 1,300–1,500 tons of cargo had been lightered. She was carrying ore and nitrate. The latter would have been ruined had it been water soaked. Before lightering was resorted to, endeavors were repeatedly made to get her off with tugs; the ship's engines assisting. These efforts injured the machinery. An adjustment was made, and the principal items admitted are expenses resulting from engine damage, and cost of lightering cargo. An average bond having been given, this action is by the adjusters as trustees, against the owners of ore cargo.

The questions raised by answer may be reduced to the contention that there was no peril common to ship and cargo, and therefore no ground for a general average adjustment.

If there was a common peril, the case seems to present no difficulty, for undoubtedly damage done to a vessel or her machinery through efforts to float her, when stranded, are general average when the ship is in a position of peril; and when such stranding occurs near her destination, and cargo is discharged and delivered at such destination by lighters, the salvage and other extraordinary expenses up to the time of delivery of cargo are also general average. Coe, pp. 32 and 46. If any objection to the average items more specific than above noted was intended to be made, it has not been specially pleaded nor raised in argument.

The single question then remains: Was the Trojan and cargo in peril when aground on soft mud, in a large but land-locked harbor, even if there detained for several days by winds that prevented those normal high tides on which alone so large a steamer could get through the channel, even if she had not grounded?

It is noticeable that once aground the tide flow formed a mud bank against the vessel, so that detention for even one tide made it harder to get off at the next.

In my judgment the evidence shows a real and common peril. The Trojan took ground at her bow. She always had the deeper water aft. She did not lie level. There was actual danger that a very possible combination of tide and wind would slew her into such a position that her midship section would be (considerably) unsupported. If in such plight she did not break, she certainly would strain and leak, to the probable ruin of the nitrate. The local traffic in Raritan Bay is heavy, and largely composed of tows—at best unwieldly. The weather was actually foggy, and fogs are to be expected at the season of the year in question. A collision would have been most serious, and was

reasonably to be feared. These matters were actually present in the master's mind, as he swears, and did induce a belief in "an impending peril apparently imminent." This is enough to support a general average, even though subsequent investigation leads to the belief that less drastic and expensive methods might have been sufficient. The Wordsworth (D. C.) 88 Fed. 315, and cases cited.

If, as I believe, the findings above made are supported by the proofs, this decision is quite long enough; but the argument extended to matters of such interest that I yield to temptation and join in the discussion.

[2] Doubtless there must at least be a reasonable apprehension of common danger before the sacrifices made can become the subject of average. If there be a danger, it must be of a very peculiar character not to be common to the whole adventure. But it would reduce the equity of average to an absurdity, to insist that common danger means equal danger. Such insistence, if recognized at all, should extend to different kinds of cargo; of which this case is an illustration, —for in a very real sense the Trojan's ore was in slight danger as compared with the nitrate. The thought was advanced in respect of salvage of specie in The St. Paul, 82 Fed. 105, citing The Longford, 4 Asp. 385, and met with the favor it deserved.

[3] The query remains: What is the kind or measure of "danger" that may become the foundation of general average?

It is always interesting to listen to a master mariner on the subject of marine peril, and the interest largely lies in the fact that what he fears is often so far beyond the landsman's ken, as to seem less dreadful than matters easily supplied by any reader of poems—which are rarely composed by seamen. Yet, as Mr. Lowndes justly observes, landsmen of eminence, if not of what is technically called authority, have essayed the difficult task of laying down how much danger is requisite to justify an act of sacrifice. Lowndes (5th Ed.) p. 45. All such efforts are worse than useless. The shipowner entrusts his ship, and the shipper his cargo, to the master, confiding in his experience, ability, honesty, and courage. No apparatus of insurance or shipping documents can take away this ultimate confidence and responsibility. If, after due examination by all parties in interest, such master mariner appears to have acted under an honest apprehension of imminent danger, there must be very strong evidence to overset the presumption attaching to his opinion. If he finds danger in a land-locked harbor, in shallows, at anchor, or moored to a wharf, it should be no answer to register a landsman's opinion as to the necessary absence of danger at such a place.

Each case depends on its own facts, and danger in general average must always remain as elusive of definition as negligence or patentable invention. To me there is nothing absurd or unjust in the extreme case put by Kelly, C. B., and cited by Lowndes, supra, p. 44.

Decree for libelant.