## THE LACKAWANNA.

### (District Court, W. D. New York. February 18, 1915.)

1. SALVAGE ☞27—SUIT TO RECOVER COMPENSATION—ESTOPPEL.

An offer by a voluntary salvor, without contract, to accept a stated sum for the service, if not accepted, does not conclude him from asking a more liberal compensation, when compelled to sue.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 65, 66; Dec. Dig. ☞27.]

2. SALVAGE ☞37—LIABILITY OF CARGO TO CONTRIBUTE—NEGLIGENCE OF VESSEL.

While, in general, ship and cargo must proportionately bear salvage expenses, where there is a common peril, yet, where the salvage services are rendered necessary by the ship's negligence or unseaworthiness, the cargo may be relieved from contribution, and the vessel bound for the entire expense.

[Ed. Note.—For other cases, see Salvage, Cent. Dig. §§ 92, 94–102; Dec. Dig. ☞37.]

In Admiralty. Suit by the Reid Wrecking Company, Limited, against the steamer Lackawanna. On exceptions to report of special master. Overruled, and decree for libelant.

Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, for libelant. Brown, Ely & Richards, of Buffalo, N. Y., for claimant.

HAZEL, District Judge. [1] The facts, which are undisputed, are stated in the opinion of the special master, and need not be here restated. The exceptions filed by libelant and respondent to the award by the special master of $750 for volunteer salvage services are overruled. I was inclined at first to think the amount should be reduced, in view of the fact that the libelant, in rendering his bill for such salvages, placed the amount which he was willing to accept as payment in full at $500; but, as the bill was not paid by respondent, it now seems to me that the libelant is not concluded in this proceeding from asking a more liberal compensation, especially as there was no contract for the payment of a specified sum for the services. The Ca-

manche, 8 Wall. 448, 19 L. Ed. 397. In explanation of the increased demand there was evidence that at the time of sending the bill libelant was not informed of the extent of the danger to which the steamer was subjected and from which she was rescued. It also appears that in engaging in the said salvage services the tugboat James A. Reid became liable in the sum of $250 for damages sustained by a schooner which she was towing, and which she abandoned when she perceived the peril of the steamer Lackawanna and went to her assistance.

[2] The respondent has also excepted to the determination of the special master that the steamship alone was liable for the salvage services rendered while she was aground. The contention is that, as she and her cargo both were imperiled, the salvage services were rendered for the benefit of both, and both should proportionately pay therefor; but that, as the proceeding is in rem against the ship only, the recovery can be for only the ship's proportion of the salvage services rendered. For reasons hereinafter stated, however, the exception is not sustained.

To float the vessel after she was grounded the evidence shows that it was necessary merely to patch her and pump her out. No portion of her cargo had to be lightered, the particular services rendered being specified in an agreement between her master and the libelant. It is the general rule, where a vessel is aground and it is necessary to unload her cargo in order to float her, that both the vessel and the cargo are regarded in law as imperiled, and that the salvage services in such circumstances are performed in the common interest and for the common benefit, and accordingly the payment therefor must be borne by both; but there are well-recognized exceptions to this rule, for instance, after a vessel is unloaded and her cargo delivered, there is no longer a community of interest, and the vessel alone is obliged to bear the expense of being floated. The St. Paul (D. C.) 82 Fed. 104. So, also, is there an exception where the stranding does not endanger the cargo, as in cases where the vessel is grounded on the beach or shore. In such a situation it often happens that, though there may be danger of damage to the ship, there is no danger to the cargo, and hence the latter should not be held liable for services rendered in releasing the ship. The Alcona (D. C.) 9 Fed. 172; The L'Amerique (D. C.) 35 Fed. 835. See, also, International Navigation Co. v. Atlantic Mutual Ins. Co. (D. C.) 100 Fed. 304.

In the case at bar the respondent urges that the vessel was in danger of breaking in two by reason of the washing of the sand from under her, and the consequent straining and weakening, and that therefore the cargo, consisting of shingles, copper, flour, bran, and middlings, was also imperiled, and should accordingly assist the vessel in the payment of salvage expenses. I think there is force in this contention, for a community of interest or a common peril, such as would afford a right to contribution and general average, is not thought to mean equal danger, and therefore I think the cargo, though not in equal danger with the vessel, was nevertheless not relieved from contribution for salvage services. Willcox, Peck & Hughes v. American Smelting & Refining Co. (D. C.) 210 Fed. 89. But, notwithstanding

the foregoing, there is nevertheless a reason for relieving the cargo from such expenditure.

It is asserted that the salvage services in their entirety were made necessary by the fact that the steering gear of the Lackawanna was defective, as a result of which she came into collision with the barge Chieftain. The Circuit Court of Appeals has sustained this view. The Lackawanna, 210, Fed. 262, 127 C. C. A. 80. Although, generally speaking, the ship and cargo must proportionately bear the salvage expenses where there is a common peril, yet, where the salvage services are rendered necessary by the ship's negligence, the cargo may be relieved from contribution and the vessel bound for the entire expense. International Navigation Co. v. Atlantic Mutual Ins. Co., supra; The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831, 43 L. Ed. 130. The employment of the tug James A. Reid by the master of the Lackawanna to assist in floating her was an employment for salvage services, and no doubt gave rise to a maritime lien on the ship. If the salvors had elected to proceed against both the vessel and cargo, and had recovered against them both, the cargo, in my opinion, because of the unseaworthiness of the vessel or her negligent navigation, could have recovered from the vessel the amount for which it was held liable to the claimant. The Wildcroft, 201 U. S. 378, 26 Sup. Ct. 467, 50 L. Ed. 794; Strang, Steel & Co. v. Scott, 14 App. Cas. 601.

None other of the exceptions requires special attention. They are all overruled.