Tilghman C. J.
In order to make a case of general average, it is necessary that the ship should be in distress, and a part sacrificed in order to preserve the rest. It is necessary also, that this sacrifice should be conducive to the saving of the rest, and that it should be voluntary; for if the loss is occasioned by the violence of the tempest, there is no reason for. contribution. Nothing can be more equitable than that all should contribute towards the reparation of a loss, which has been the cause of their safety; and nothing more politic, because it encourages the owner to throw away his property without hesitation in time of need. It has been said *478 that there must be a previous consultation, but this may be doubted. Consultation indeed is a demonstrative proof that the act was voluntary. But I should think that if it appears, that the act occasioning the loss was the effect of judgment, it is sufficient. Eor in time of imminent danger, immediate action may be necessary, and consultation "may be destruction. But even supposing consultation to be necessary, it w’as a fact submitted to the jury. I must suppose they were of opinion, that there was a consultation, and I see no cause to quarrel with the verdict on that account. But it is contended on the part of the defendants, that there was neither consultation, will, nor judgment in the case; that the ship was driven on shore by the violence of the storm, which no efforts of man could resist. Granting, however, that the storm was irresistible, it does not follow that there was no exercise of judgment, for there may be a choice of perils when there is no possibility of safety. The case seems to have been this, that after a fruitless attempt to fetch to sea, it was the opinion of the pilot, that the ship must go ashore somewhere, and it was thought best to take that course which would bring her nearest to the Jersey shore. If she had kept her course, the pilot supposes that in about twenty-five minutes she would have gone on Egg Island flats. To prevent that, the course was altered, and they stood for Cape May, the most desirable place to run on shore. The captain wished to get to Cape May, and the pilot said he would try for it, although he did not expect to effect it, but supposed they should stick on a ridge about four miles from the cape. On this ridge the ship struck according to the pilot’s expectation. She lost her rudder, and labored very hard on the ridge; the mizzen and mainmast were cut away to save her, and at length contrary to expectation, she beat over, and got into deep water between the ridge and the Jersey shore. Being then quite ungovernable, she was at the mercy of the winds and currents, which most fortunately and unaccountably brought her on the shore near to Cape May, the object of their wishes. The damage was very considerable both on the ridge and at the cape, and in the course of the argument, the damage at these two places has been the subject of separate consideration. I think there cannot be a doubt, but the injury sustained on the ridge must be a subject of general average, because the masts were cut away by order of the pilot, manifestly for the benefit of ship, car&° an<l crew. *It is very easy for persons who are in perfect safety, to make light of dangers which in fact were great. It is now said that the cargo, which was *479 principally specie, was in no danger. The pilot indeed in his evidence, said that he was not afraid of the ship’s going to pieces; but the pilot was not infallible; he thought there was no danger of parting their best bower cable, he thought the ship would not beat over the ridge; but he was mistaken in both. In such a storm as has been described, it is too much to say, that the cargo was in no danger. But supposing the damage on the ridge to be general average, what are we to say to the subsequent damage ? To decide this, we must go back again to the time when the course was altered, in order to avoid the flats of Egg Island. It is said for the defendants, that the ship must have gone ashore somewhere, and it made no difference where that shore was; that there was no advantage in taking the course that was taken, and that the ship was exposed to no greater danger than she would have been, if the course had not been altered. It is not necessary that the ship should be exposed to greater danger than she otherwise would have been, to make a case of general average. It is sufficient if a certain loss is incurred for the common benefit. It seems at first view not very reasonable, that contribution should be asked for damage occasioned by an act, which in fact was for the benefit of the ship. But the law is certainly so, provided the act which occasioned the damage, was conducive to the common safety. In truth if we go to the bottom of the thing, almost every damage to part of a ship, which can be the subject of general average, is for the benefit of the ship. A mast is cut away, in consequence of which the ship is saved; this is clearly a general average, because the cargo is also saved, which would otherwise have been lost. So with regard to the cargo, if part is thrown over to lighten the ship, although the remainder of the cargo is saved by it, yet the ship and freight shall contribute, because they also were saved. In the case cited from Emerigon, the ship was run on shore to avoid foundering, by which she was placed evidently in a better situation, yet it was held to be general average. It is no objection, therefore, to general average in this case, that the ship was exposed to no greater danger, *than she would otherwise have been in. But did the standing towards Cape May conduce to the common benefit? It is extremely difficult to say whether it did or did not. One thing however is certain, that as the matter turned out, the crew and cargo were entirely saved. Whether that would have been the case, had any other course been pursued, it is impossible to decide with absolute certainty. It was a question however very properly submitted to the jury, and they have found in the *480 affirmative. Taking it then, that the ship was run upon the ridge with a view to the common good, and that it was conducive to the common good, it follows, that not only the damage sustained on the ridge, but also at Cape May must be the subject of general average, because the damage at Cape May was the necessary result of running on the ridge. The ship lost her rudder and masts on the ridge, in consequence of which she was driven by the winds and waves on the shore near the cape. The same reasoning applies to the boats. For it was left to the jury to decide, whether the damage done to them was in consequence of running on the ridge. Upon the whole it appears to me, that it was a nice point on which the jury had to decide, but there is no sufficient cause for setting aside the verdict.
Yeates J.
The commercial law respecting gross average, was not disputed on the trial. The difficulty rested in its application to the facts of the case. The captain was dead, and his protest was overruled on the ground of its not being the original taken by the justice of the peace. The pilot and carpenter were examined; the former was intelligent and collected, the latter was much otherwise.
The legal principles of general average which I gave in charge to the jury, have not'been questioned on this argument. I submitted to them the questions of fact, on which I thought their decision ought to depend. "Was there a voluntary act done by the captain for the safety of the crew, the ship and her cargo, which though it endamaged the ship, contributed to the benefit of all concerned? Was not the specie on board rendered more secure by the vessel being cast on shore near Cape May, than when exposed to marauders a shoal in the bay ? As to the expense of bringing up the specie to this city, I thought it just and reasonable that the defendants should bear their proportion thereof, and that the plaintiff was entitled to recover the same under the count for money paid, laid out and expended. A reasonable sum ought to be allowed for the services rendered by Captain Towers in bringing up the ship, which the jury were to judge of; the shippers were not concluded by the amount of the sum paid to him ; and as to the boats, if they were lost by the misconduct of the crew, the defendants were in nowise responsible therefor.
In my conclusion I informed the jury, that if they were satisfied from the testimony, that there was such a consultation as might reasonably be expected under strong circumstances of impending danger from the storm, a determination *481 formed thereon for the preservation of the crew, ship, and her lading, and acts done in pursuance thereof for the common benefit and conducing thereto, though the ship after working off the ridge would not obey the helm, and was at the mercy of the winds and waves, I inclined to think it a case of general average, as well as to the damage accruing after leaving the ridge, on which she had struck, as to what had happened upon the ridge. The jurors have found those facts by their verdict, and so far am I from thinking that their verdict was against evidence, I have already declared that I was not dissatisfied therewith, and my mind retains the same impression at this moment. After a full and fair hearing, and the decision of an intelligent jury, it lies not with the members of this Court to say, that it did not tend to the common safety to cut away the masts while the ship was beating violently on the ridge of rocks, or that it was more eligible to run her on shore on Egg Island fiats, than to attempt passing the ridge, and strand her on Jersey shore near Cape May.
I concur in opinion that the motion for the new trial be denied.
Brackenridue J. concurred.
Motion denied.
[In Walker v. The United States Insurance Co., 11 S. & R. 64, the Court refused to be guided by the principles laid down in Sims v. Gurney, and in Meech v. Robinson, 4 Wh. 362, Kennedy, J. declared its authority shaken, at least, if not overruled.]