## Case No. 11,599.

### REA v. CUTLER.

[1 Spr. 135.] [1]

District Court, D. Massachusetts. May, 1846.[2]

AVERAGE—VOLUNTARY STRANDING—CONTRIBUTION.

Where shipwreck is inevitable, but the master, instead of allowing the vessel to go ashore as she is drifting, makes sail and intentionally runs her ashore, at the place where he thinks life and property is most likely to be saved, and the vessel is lost, the property saved must contribute in general average for the loss of the vessel.

[Cited in Fitzpatrick v. Eight Hundred Bales of Cotton, Case No. 4,843; Oologaardt v. The Anna, Id. 10.545; The Star of Hope, 9 Wall. (76 U. S.) 234.]

[Distinguished in Emery v. Huntington, 109 Mass. 436.]

This was a libel, brought in behalf of the owner of the bark Zamora, against the consignee of a part of her cargo, to recover a general average contribution. for the alleged voluntary sacrifice of the vessel. It appeared by the evidence, that on the night of December 16th, 1845, during a violent gale, the vessel came to anchor about four miles off Manomet Point; that soon after she began to drag, and drifted slowly, stern foremost, towards this point, which ran out about three-quarters of a mile, and on which the breakers were very heavy. As it was impossible to keep clear of the shore by making sail, the captain concluded that one of two things must be done; either to cut away the masts, with the hope the anchors would then hold, or to slip the cables, make sail, and run the ship on shore, in some place where there was a chance of saving life and property; he determined on the latter course, slipped his cables and made sail. After this was done, the vessel cleared the point, ran on a sunken rock, and afterwards on shore. The vessel was destroyed; the cargo saved, principally in a damaged state.

F. C. Loring, for libellant.

R. Fletcher and B. R. Curtis, for respondent.

SPRAGUE, District Judge. The only question is. whether the present case comes within the principles laid down by the supreme court in Columbian Ins. Co. v. Ashby, 13 Pet. [38 U. S.] 331. Several grounds of distinction have been taken:

First. That here there was no voluntary sacrifice, because the Zamora must inevitably have gone on shore. But in this respect, the two cases cannot be distinguished, as the special verdict in Columbian Ins. Co. v. Ashby, found that there was no possible means of saving the vessel and cargo, except by running her on shore.

The principle of law laid down in that case appears to be, that where loss by shipwreck is inevitable, but may be met in more than one way, and with different degrees of peril to life or property,—where, in short, an election remains open to the master, and he acting for the interest of all concerned, exercises his volition, and adopts that one of the several courses which seems to him least perilous. and most conducive to the common benefit, and in so acting the ship is wrecked, the loss is a ground for general average, to which the property preserved must contribute. The volition and election of the master, is the essential inquiry, and the degree of injury sustained by the vessel is unimportant.

In this case, there was a chance that the anchors might have caught a rock, and have held the vessel. There was an election on the part of the master to take this chance, or to slip the cables and run on shore; and in making this election, he exercised his volition.

It was highly probable that she would have drifted on shore, at all events; but there was a possibility that if he had cut away the masts, the anchors might have caught, and held her. This objection cannot be sustained.

Secondly. It is urged, that there was no intent to save the cargo, but only the lives of the crew, and the vessel. The testimony proves the contrary. No doubt the principal object was, as it ought to have been, to save life; but the next object was, to save as much as might be of the vessel and cargo.

Thirdly. The third ground on which it is attempted to distinguish the cases is, that here there was no intent to strike on that particular rock. But there was an intent to change the position of the vessel, and to run her on shore, in a different place from that to which she was drifting; and the accidental striking cannot be considered as affecting the intent. When the cables were slipped and sail made, the going on shore was inevitable, and the intent to do so must have existed. In this respect, the case is very similar to that of Sims v. Gurney, 4 Bin. 513; which is referred to with approbation by the supreme court; and which I do not understand to be overruled by the later case of Walker v. U. S. Ins. Co., 11 Serg. & R. 61.

Fourthly. The fourth and last ground of distinction is, that the peril, which was that of going on shore in a rocky place, was not averted. This is true, as a general statement, and the same might be made on the facts in Columbian Ins. Co. v. Ashby. But it may also be stated, otherwise, that the

[1] [Reported by F. E. Parker. Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court. Case unreported.]

peril sought to be avoided, was that of drifting, stern foremost, on a rocky point, projecting far into the sea, and far from high-water mark, and where, if the vessel had struck, all on board would probably have been lost—the vessel have gone to pieces, and the cargo have been scattered, if not lost or destroyed; that this peril was averted, and the vessel run on shore, bows on, in a much less dangerous place, near high-water mark, where the lives of all might have been preserved, and where the cargo was saved in the vessel.

On the whole, I am of opinion that the case cannot be distinguished from Columbian Ins. Co. v. Ashby, and therefore decree that the libellant is entitled to a contribution. Decree for libellant.

[NOTE. A decree was passed for $2,500, which was affirmed by the circuit court. Case unreported.]
This case was taken, by appeal, to the supreme court, and was there dismissed for want of jurisdiction. That point was not taken by the learned counsel for the respondent, and they declined to argue it, when invited to do so by the supreme court. Cutler v. Rea, 7 How. [48 U. S.] 729. See Crocker v. Jackson [Case No. 3,398].
The decision was not by a majority of the supreme court. See statement of Wayne, J., in [Cutler v. Rae] 8 How. [49 U. S.] 615, append. McLean, J., in Dihe v. The St. Joseph [Case No. 3,908], says that the decision was by a divided court, and has not been satisfactory to the profession, and was not in accordance with the prior decisions of the supreme court. It is substantially overruled by the late case of Dupont v. Vance, 19 How. [60 U. S.] 162.